**INDIANA STATE HIGHWAY COMMISSION, Appellant (Defendant below),**

v.

**Bonnie C. MORRIS, Personal Representative of the Estate of Cindy J. Morris, Deceased, Sherri Norton and Kathy L. Morris, Appellees (Plaintiffs Below).**

**No. 41S01–8809–CV–833.**

Supreme Court of Indiana.

Sept. 22, 1988.

Linley E. Pearson, Atty. Gen., Robert F. Hassett, Deputy Atty. Gen., Indianapolis, for appellant.

Peter Campbell King, Cline, King, King & David, Patrick W. Harrison, Beck & Harrison, Columbus, Tom G. Jones, Jones, Loveall, Johnson & Bailey, Franklin, for appellees.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

Two vehicles collided on a one-lane state highway bridge near Seymour, Indiana, resulting in the death of Cindy J. Morris and in injuries to passengers in both vehicles. Various subsequent damage suits were filed against the Indiana State Highway

Commission (Commission) alleging negligence in construction, maintenance and traffic engineering of the bridge. Following agreed consolidation and resolution as to some of the claims, a jury trial resulted in verdicts and judgments in favor of the plaintiffs. The Court of Appeals reversed because of plaintiffs' failure to serve statutory tort claim notices on the Attorney General. *Indiana State Highway Comm'n v. Morris* (1986), Ind.App., 488 N.E.2d 713. We grant transfer.

The issues raised by appellant Commission relate to the following general issues:

1. Tort Claims Act notice requirement;
2. statutory limitation on amount of liability;
3. admissibility and effect of covenants-not-to-sue;
4. defendant's liability for costs.

*Tort Claims Act Notice Requirement*

■ The Commission first contends that plaintiffs' claims are barred by reason of their failure to serve dual notices of tort claim on both the Commission as the involved state agency and the Attorney General. The accident occurred October 14, 1978. By certified mail, plaintiffs mailed their notices of tort claim to the Commission. The notices were received on February 6, 1979, by Commission employee William T. May, serving in the capacity of Assistant Chief Engineer—Administration. Plaintiffs did not send tort claim notices to the Attorney General. However, on February 6, 1979, in accordance with his usual policy in cases against the Commission, Mr. May made copies of the notices and forwarded them to the Office of Attorney General, which received them on February 7, 1979.

The applicable provision of the Indiana Tort Claims Act provides:

Except as provided in [34-4-16.5-8] a claim against the state is barred unless notice is filed with the attorney general and the state agency involved within one hundred eighty (180) days after the loss occurs. However, if notice to the state agency involved is filed with the wrong state agency, that error does not bar a claim if the claimant reasonably attempts to determine and serve notice on the right state agency.

Ind.Code § 34-4-16.5-6. There is no dispute regarding the adequacy of the content of the notices.

The Commission contends that the requirements of Ind.Code § 34-4-16.5-6 were not met because the notice received by the Attorney General was not received directly from the plaintiffs, and that the doctrine of substantial compliance is not applicable.

The language of the statute, literally applied, simply requires that the tort claim notice be "filed" with the Attorney General and the state agency. It does not designate *who* must file the notice. Noting that the present Tort Claims Act requires only that notice "be given," the Court of Appeals has refused to permit "a party to rely upon the notice of claim given by some other party for that party's claim arising out of the same occurrence." *Rosga v. City of Hammond* (1985), Ind.App., 493 N.E.2d 787, 788–89.

Nor do we believe such reliance should be permitted. The city is entitled to know that the party is making a claim. Indeed, IC 34-4-16.5-10 contemplates that the city will pass on the claim and directs that it notify the claimant in writing within ninety (90) days of its approval or denial of the claim.

*Id.* In the present case, these objectives are satisfied because the Commission and the Attorney General each received timely notice fully advising them that the plaintiffs were making a claim.

The Commission emphasizes prior cases holding that mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance. *Dunn v. City of Indianapolis* (1983), Ind.App., 451 N.E.2d 1122; *City of Indianapolis v. Satz* (1978), 268 Ind. 581, 377 N.E.2d 623; *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333; *Galovick v. State* (1982), Ind.App., 437 N.E.2d 505.

In *Delaware County v. Powell* (1979), 272 Ind. 82, 84, 393 N.E.2d 190, 191, Justice Pivarnik observed:

From *Geyer, supra,* and [*City of Fort Wayne v.*] *Cameron,* [ (1977), 267 Ind. 329, 370 N.E.2d 338], it is clear that mere actual knowledge of the occurrence or routine investigation of it is not sufficient to constitute substantial compliance with the statute. However, it is equally clear from these cases that the notice requirement can be waived or substantial compliance may be proved. . . .

Although the specifics of the purposes of the notice statute have been elaborated upon in previous cases, Justice Hunter stated the larger consideration underlying allowing proof of substantial compliance in *Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 255 N.E. 2d 225. *Galbreath* has been cited many times with continuing approval. The significant language of that opinion reads as follows:

> The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied.* (original emphasis)

253 Ind. at 480, 255 N.E.2d at 229.

■ Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied. *Galbreath, supra; Burggrabe v. Board of Pub. Works* (1984), Ind.App., 469 N.E.2d 1233; *Mills v. American Playground Device, Co.* (1980), Ind.App., 405 N.E.2d 621. The purposes of the notice statute include informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that political division may investigate, determine its possible liability, and prepare a defense to the claim. *Geyer, supra; Galbreath, supra; Burggrabe, supra; Dunn, supra.*

These purposes, combined with that of requiring a claimant to announce his intention to assert a claim, as noted in *Rosga, supra,* are thus the recognized objectives of the statutory notice requirement. In the present case, both the Commission and the Attorney General not only received full and timely information regarding the occurrence, but they each received formal notification of plaintiffs' intentions to assert a claim. This constituted more than mere actual knowledge. It satisfied the statutory objectives and achieved substantial, if not actual, compliance.

■ The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court. *City of Indianapolis v. Satz, supra, Thompson v. City of Aurora* (1975), 263 Ind. 187, 325 N.E.2d 839. The trial court correctly ruled that plaintiffs' claims were not barred by reason of failure to comply with the statutory notice requirement.

### Statutory Limitation on Amount of Liability

■ The Commission next contends that the trial court erred in overruling its motion for remittitur. It argues that the verdict of $700,000 in favor of plaintiff Bonnie C. Morris, personal representative of the estate of Cindy J. Morris, deceased, and the verdict of $500,000 in favor of plaintiff Sherri Norton, were subject to remittitur to $300,000 each by reason of Ind.Code § 34-4-16.5-4 which provides:

> The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment and not excluded from liability under [Ind.Code § 34-4-16.5-3], does not exceed three hundred thousand dollars [$300,000] for injury to or death of [1] one person in any one [1] occurrence and does not exceed five million dollars [$5,000,000] for injury to or death of all persons in that occurrence. A governmental entity is not liable for punitive damages.

Plaintiffs correctly note that the statute does not prohibit a *verdict* in excess of $300,000. *State v. Bouras* (1981), Ind. App., 423 N.E.2d 741. They further urge that the statute likewise does not apply to judgment entries, but is only applicable to prevent a judgment creditor from actually collecting more than the statutory limits.

While there is no proper purpose served by advising the jury of the statutory limits, we find that the entry of judgment is the appropriate point at which the statute should be applied. We therefore hold that the final judgments should not have been in excess of the applicable statutory limitation.

### Admissibility and Effect of Covenants–Not–To–Sue

█ The Commission next contends that the trial court erred in excluding evidence regarding covenants-not-to-sue and payments received thereunder for the reason that these rulings precluded it from presenting the issue of whether plaintiffs had been fully or partially compensated.

The following facts from the parties' Agreed Statement of the Case pursuant to Appellate Rule 7.3 are relevant to our determination of this issue:

28. On March 25, 1980, [prior to commencement of trial] Plaintiff Bonnie C. Morris, as Personal Representative of the Estate of Cindy J. Morris, executed a covenant not to sue in favor of Sally Hauersperger [driver of the other vehicle] in exchange for a payment of $26,000.

29. On March 25, 1980, the plaintiff, Sherri Norton, executed a covenant not to sue in favor of Sally Hauersperger in exchange for a payment of $30,000.

30. On March 25, 1980, James W. Morris and Bonnie C. Morris individually and as Father and Mother and natural guardians of Plaintiff, Kathy L. Morris, a minor, executed a covenant not to sue in favor of Sally Hauersperger in exchange for a total payment of $24,000 which was broken down as follows:

To James W. Morris and Bonnie C. Morris, individually, the sum of $20,500;

To James W. Morris and Bonnie C. Morris, as parents and natural guardians of Kathy L. Morris, a minor, the additional sum of $3,500.

The covenant stated that in consequence of Kathy's injuries, James W. Morris and Bonnie C. Morris had been deprived of and will continue hereafter to be deprived of the services of their daughter Kathy and that they have incurred medical, hospital and legal expenses for her care, all of which resulted in damage to them personally.

31. On March 25, 1980, Sue Norton, individually and as Mother and natural guardian of Sherri Norton, a former minor, executed a covenant not to sue in favor of Sally Hauersperger for exchange for a payment of $19,500. The covenant provided that in further consequence of the injuries to Sherri Norton, Sue Norton was deprived of the services of her daughter, Sherri Norton, and that further she has incurred medical, hospital and legal expenses for her care, all of which result in damages to her personally.

32. On February 19, 1985, Plaintiffs filed a Motion in Limine which, in Paragraph 2, requested the court to exclude evidence of any collateral payment by any insurance carrier to the Plaintiffs, their parents, or any passengers of the vehicles, and in Paragraph 6, to exclude any evidence that any Plaintiff asserted a prior claim against Sally Hauersperger.

33. On February 19, 1985, the Court granted the said Paragraphs 2 and 6 of the Motion in Limine and ordered the State not to refer in any way to the matters excluded.

34. Subsequently, the Court modified its Order and admitted into evidence the payment of $26,000 to Bonnie C. Morris, Personal Representative of the Estate of Cindy J. Morris, deceased; the payment of $30,000 to Sherri Norton; and the payment of $3,500 to Bonnie C. Morris and James W. Morris, parents of Kathy L. Morris, a minor.

35. The court excluded evidence of, and any reference to, the payment of $20,500 to James W. Morris and Bonnie C. Morris, individually and as Father and Mother of Kathy L. Morris, minor, and of the payment of $19,500 to Sue Norton. R. 48–50.

It is undisputed that the excluded evidence pertained exclusively to partial set-

tlements received by the parents of two of the plaintiffs. To the extent the settlement proceeds were paid to the parents in their representative capacities as guardians for the benefit of the child, the jury was informed. Settlement proceeds paid to the plaintiffs' parents for the parents' separate personal claims are not chargeable to reduce the damages which the children were claiming in their separate suit.

The Commission argues that the plaintiffs were claiming compensation "for those very expenses for which the parent(s) were liable and for which the parents were compensated[.]" Brief of Appellant, p. 29. In *Scott County School District One v. Asher*, (1975), 263 Ind. 47, 52, 324 N.E.2d 496, 499, we stated:

> However parent and child divide their claim for medical expenses, that division is of no consequence to the tort feasor, as long as he is not subject to pay twice for the same expenses. If either parent or child brings suit against the tort feasor and claims medical expenses which have already been claimed and awarded in an earlier suit, then the tort feasor may plead in answer that judgment and his payment pursuant thereto.

We find no indication that the Commission attempted to present evidence that any children's medical expenses included in the evidence at trial had been paid from, or included as a portion of, the settlement compensation received by the parents in exchange for the covenants-not-to-sue. The mere receipt by the parents of a settlement which included compensation for their personal claims for loss of services resulting from the injuries to their children is not adequate to prove which portion, if any, was attributable to the children's medical expenses. The consideration paid to the parents for items of their personal damage apart from medical expenses cannot be claimed as a set off against the children's verdicts.

■ The Commission also argues that the trial court erred in failing to set off against the verdicts the following sums received under covenants-not-to-sue: Bon-

nie C. Morris, $26,000; Sherri Norton, $30,000; Kathy L. Morris, $3,500.

Amounts received as consideration for covenants-not-to-sue and covenants-not-to-execute are treated as partial satisfaction applicable toward any resulting damages assessed against other tort-feasors, who are then entitled to *pro tanto* credit for such amount. *Bedwell v. Debolt* (1943), 221 Ind. 600, 50 N.E.2d 875; *Steeg and Assoc. Inc. v. Rynearson* (1968), 143 Ind. App. 567, 241 N.E.2d 888; *Scott v. Krueger* (1972), 151 Ind.App. 479, 280 N.E.2d 336. In *Bedwell*, this Court explained:

> It is well settled that all joint tort-feasors liable for an injury are discharged by the unqualified release of one. The amount of the consideration paid for such a release is immaterial so long as it is sufficient to support a contract and the transaction is not tainted by fraud or mistake. Likewise, full satisfaction of such a claim for damages by one of the tort-feasors operates to discharge all, though no release is executed. On the other hand, it is equally well settled that a covenant not to sue one tort-feasor does not bar an action against the others, but only operates as a satisfaction of the damages, *pro tanto*, as to the benefits received.

221 Ind. at 609, 50 N.E.2d at 878–79.

■ Plaintiffs concede that the verdicts should be reduced accordingly, but contend that the amount should be subtracted from the total verdict, not from the judgment after reduction pursuant to the Tort Claims Act limitations. We agree.

As an enactment in derogation of common law, the statutory limitation on damages under the Tort Claims Act must be strictly construed and narrowly applied. The verdict of $700,000 in favor of plaintiff Bonnie C. Morris, after reduction by the $26,000 payment received by her, remains well in excess of her maximum judgment of $300,000. Plaintiff Sherri Norton's verdict of $500,000, after reduction of $30,000, likewise remains in excess of her maximum $300,000 judgment. The $30,000 jury verdict in favor of Kathy L. Morris should be reduced by the $3,500 settlement received

under her covenant-not-to-sue, thus resulting in a judgment of $26,500.

### Defendant's Liability for Costs

As to the Commission's final issue, the plaintiffs concede that the Commission is correct that it cannot be liable for court costs in this matter. The parties have stipulated that the judgment erroneously declares that plaintiffs are entitled to their costs.

Transfer is granted, the Court of Appeals opinion is vacated, and this cause is remanded to the trial court for correction of judgment entry in accordance with this opinion.

SHEPARD, C.J., concurring with opinion in which DICKSON, J., concurs.

DeBRULER, J., concurs.

GIVAN, J., dissenting with opinion in which PIVARNIK, J., concurs.

SHEPARD, Chief Justice, concurring.

I join the Court in concluding that May's transmittal of plaintiffs' notice to the Attorney General satisfied the tort claim notice requirement. The chilling effect which such a ruling could have on communications within the executive branch, however, is important to the resolution of this case. I therefore write separately to note that the communication from May to the Attorney General should not have been subject to disclosure.

While the Record on Agreed Statement is not complete on this point, it appears that plaintiffs discovered through deposing May that he had sent the Attorney General a copy of the tort claim notice. The Highway Commission also answered plaintiffs' request for admissions by admitting that the Attorney General had timely received a copy of the notice from May. Apparently, no objection was made to these questions. The rule of attorney-client privilege, however, establishes the confidentiality of the communication.

The Attorney General acts as attorney to his client—the State and its agencies. As for actions brought under the Tort Claim Act, he has the duty to advise the Governor concerning compromising or settling a claim or suit brought against the State or its employees, to perfect any compromise or settlement made by the Governor, and to defend, as chief counsel, the State and its employees. Ind.Code § 34–4–16.5–14 (Burns 1986 Repl.).

Beyond his duties concerning tort claims, the Attorney General must "defend all suits that may be instituted ... against the state of Indiana...." Ind.Code § 4–6–2–1 (Burns 1986 Repl.). The Attorney General's authority to represent the State, its agencies and officers is nearly exclusive, and agencies may not employ any attorney without the written consent of the Attorney General. Ind.Code §§ 4–6–5–3, –6; *see In re Property at Marriott Inn* (1983), Ind.App., 456 N.E.2d 444, *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

The relationship of attorney and client clearly applies to the Attorney General and the state agencies he represents, and the attorney-client privilege should protect communications exchanged in that relationship. Though this Court has never addressed the question directly, the rationale underlying the attorney-client privilege supports its application to state agencies and their attorneys. The privilege protects those in need of legal services by providing for complete and confidential information to an attorney so the attorney may be fully advised in serving the client while assuring the client that these confidences will not be revealed. *Colman v. Heidenreich* (1978), 269 Ind. 419, 381 N.E.2d 866. A state agency has the same need for confidential legal advice.

Other jurisdictions have recognized the attorney-client privilege between the government and its attorney. *See Green v. I.R.S.,* 556 F.Supp. 79 (N.D.Ind.1982) (attorney-client privilege applicable to relationship between Government attorneys and administrative personnel), *aff'd,* 734 F.2d 18 (7th Cir.1984); *Riddle Spring Realty Co. v. State,* 107 N.H. 271, 220 A.2d 751 (1966) (report made by state employee at

request of attorney representing state agency privileged); *People ex rel. Dept. of Public Works v. Glen Arms Estate, Inc.*, 230 Cal.App.2d 841, 41 Cal.Rptr. 303 (1964) (appraisal report made by state highway employee and communicated to state's attorney properly excluded as privileged because the employee was required to make the report, made it as agent of the state, and did so to prepare for litigation).

This privilege is not defeated by the requirement of open public records. Generally, any person may inspect the public records of any public agency. Ind.Code § 5–14–3–3(a) (Burns 1987 Repl.). The legislature has created an exception to this rule for records declared confidential by statute or by Supreme Court rule. Ind. Code § 5–14–3–4(a)(1), (8). Privileged communications between attorney and client are protected by both. Ind.Code § 34–1–14–5 renders attorneys incompetent to testify as to confidential communications made to them in the course of their professional business. This statute is the codification of the attorney-client privilege. *Key v. State* (1956), 235 Ind. 172, 132 N.E. 2d 143 (construing the predecessor statute, § 2–1714 (Burns 1946 Repl.)). An attorney also has a statutory duty to preserve the confidences and secrets of his client. Ind. Code § 34–1–60–4. This is a further codification of the privilege. *Colman*, 269 Ind. at 422, 381 N.E.2d at 868. Additionally, privileged communications are excluded from discovery by Trial Rule 26(B)(1), Ind. Rules of Procedure. Thus, a privileged communication between attorney and client is exempt from public inspection because it is declared confidential by statute and Supreme Court rule.[1]

When a client seeks advice from an attorney in his professional capacity, the communication between attorney and client within the scope of the professional relationship should be treated as strictly confidential. This privilege applies to all communications made to an attorney for the purpose of professional advice or aid, regardless of any pending or expected litigation. *Colman*, 269 Ind. at 423, 381 N.E.2d at 869.

Here, the communication consisted of a dated memorandum from May to the Claims and Compensation Division of the Attorney General's office. The memorandum referenced plaintiffs' claim and informed the Attorney General that a copy was transmitted. A copy of the claim was attached.

May transmitted the memorandum and notice to the Attorney General, the State's counsel for claims under the Tort Claim Act. Though no litigation was pending, a tort claim notice is the first step in pursuing litigation against the State. Notifying the Attorney General of a pending claim in effect sought the aid of the State's attorney in settling or defending the claim. It was therefore privileged.

The existence and content of the notice itself were not privileged. It was a document in the possession of the Highway Commission prior to communication with the Attorney General. A client cannot defeat the production of evidence by passing it into the hands of his attorney. *Andrews v. The Ohio and Mississippi Railroad Co.* (1860), 14 Ind. 169. The act of communicating the document, however, is distinct from the document itself. 8 J. Wigmore, *Evidence*, § 2308 at 595–596 (McNaughton Rev.1961); *see In re Navarro* 93 Cal.App. 3d 325, 155 Cal.Rptr. 522 (1979) (privilege covers delivery of a public document by attorney to client).

While the document itself does not fall under the attorney-client privilege, the fact that the claim was communicated is privileged and need not have been disclosed to the plaintiffs. May's memorandum was

---

**1.** Public records may also be exempted at the discretion of a public agency if the records are intra-agency or interagency advisory and are communicated for the purposes of decisionmaking. Ind.Code § 5–14–3–4(b)(6). While this exemption is not particularly applicable to attorney-client confidences, the communication in this case was intra-agency. One purpose for the communication was to allow the Attorney General to determine the advisability of settling the claim, and thus was made for the purpose of decisionmaking. It was therefore exempt from disclosure at the discretion of the agency.

also privileged and not subject to disclosure.

The confidential relationship is a privilege which belongs to the client and may be waived if the client testifies concerning the privileged matter. *Key*, 235 Ind. at 175, 132 N.E.2d at 145. Here, the Commission revealed privileged information in a deposition and through an admission. The privilege was therefore waived. The Commission did not rely on privilege on appeal or on transfer, and it cannot be a factor in today's decision. The privilege nevertheless exists, and its existence will likely make today's case one of a kind.

DICKSON, J., concurs.

### CIVIL PETITION TO TRANSFER

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. The majority makes a persuasive argument that plaintiffs substantially complied with Ind.Code § 34–4–16.5–6 in that they sent notice to the Indiana State Highway Commission and in turn the Commission sent notice to the Attorney General. The majority nevertheless arrives at a decision which is not in keeping with the statute and which is contrary to the prior case law interpreting the statute.

In deciding this case, the Court of Appeals reviewed the case of *Galovick v. State, Board of Commissioners of Montgomery Co.* (1982), Ind.App., 437 N.E.2d 505 and *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333 and correctly held that because plaintiffs failed to send notice to the Attorney General within one hundred eighty (180) days after the occurrence, as required by the statute, the plaintiffs were barred from maintaining this cause of action against the State.

This is a matter exclusively within the province of the legislature. Subsequent to the decisions of this Court and the Court of Appeals interpreting the statute, the legislature has allowed the language to remain the same. I can only conclude that the legislature is in agreement with prior judicial interpretation that the statute should be strictly construed.

I would therefore deny transfer of this case and allow the opinion of the Court of Appeals to stand.

PIVARNIK, J., concurs.