Scott A. **AMMERMAN** and Alan
H. Ammerman, Appellants–
Plaintiffs,

v.

**STATE** of Indiana, Appellee–Defendant.

No. 29A02–9301–CV–32.

Court of Appeals of Indiana,
Second District.

Jan. 27, 1994.

Richard E. Steinbronn, D. Randall Brown, Barnes & Thornburg, Fort Wayne, for appellants-plaintiffs.

Pamela Carter, Atty. Gen., Tanya M. Aretz, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-defendant.

SHIELDS, Judge.

Scott A. Ammerman and Alan H. Ammerman (Ammerman) claim the trial court erroneously dismissed their tort claim against the State of Indiana. We reverse.

### ISSUE

One issue is dispositive:

Did Ammerman substantially comply with the notice provisions of the Indiana Tort Claims Act?

### FACTS

On March 30, 1985, Scott Ammerman was injured when the car in which he was a passenger was hit by a train in Hancock County, Indiana.[1] There were five passen-

---

1. Alan Ammerman is Scott's father.

gers in the car in addition to Scott; two were killed, and three others were injured.

Ammerman's attorney prepared a notice of his intent to sue the State of Indiana for negligently causing his injuries and mailed it via express mail to the Indiana Attorney General's office. The notice was addressed to both the Attorney General and the Indiana Department of Highways (the Department), but Ammerman's attorney apparently failed to mail a copy of the notice to the Department. On December 9, 1985, Ammerman sent a letter, correcting a typographical error in the original notice, to both the Department and the Attorney General.

When the State failed to respond to his notice, Ammerman filed suit against the State in April, 1986. The State filed an answer in which it asserted, as an affirmative defense, that Ammerman had failed to comply with the notice provisions of the Tort Claims Act.[2] In 1987 and 1988, the State, through the office of the Attorney General, engaged in settlement negotiations with Ammerman, but a settlement was not reached.

On February 28, 1989, the State filed a motion for summary judgment[3] alleging that Ammerman's claim should be dismissed because Ammerman had failed to comply with the notice provisions required by the Tort Claims Act. The trial court granted the State's motion.

## DISCUSSION

The Indiana Tort Claims Act (the Act) provides that "a claim against the state is barred unless notice is filed with the attorney general and the state agency involved within one hundred eighty (180) days after the loss occurs." IC 34–4–16.5–6. Because Ammerman failed to send notice to the Department, he did not comply with this statute.[4]

However, it is well established that the failure to strictly comply with the Act is not fatal to a claim if the plaintiff substantially complied with the notice provisions. *See, e.g., Collier v. Prater* (1989), Ind., 544 N.E.2d 497; *Indiana State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468; *Delaware County v. Powell* (1979), 272 Ind. 82, 393 N.E.2d 190; *City of Tipton v. Baxter* (1992), Ind.App., 593 N.E.2d 1280; *Coghill v. Badger* (1981), Ind.App., 418 N.E.2d 1201; *Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 255 N.E.2d 225. Because statutes such as the Act are in derogation of the common law they must be strictly construed against limitations on a claimant's right to bring suit. *Collier,* 544 N.E.2d at 498. Thus, our supreme court has held:

> The purpose of the notice statute being to advise the [governmental entity involved] of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied.*

*Id.* (citing *Galbreath,* 253 Ind. at 479–80, 255 N.E.2d at 229) (emphasis in original). "Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied." *Morris,* 528 N.E.2d at 471 (citations omitted). The question of substantial compliance, al-

---

2. IC 34–4–16.5–6 (1988).

3. The State's motion, which is titled "Motion to Dismiss," states that it was filed pursuant to Ind.Trial Rule 12(B)(6) and Ind.Trial Rule 56. On appeal, both the State and Ammerman correctly consider this motion as a motion for summary judgment because the State relied on an affidavit attached to its motion. *See* T.R. 12(B).

4. Ammerman argues there is an issue of fact regarding whether he complied with the statute because there are "a number of material facts from which an inference of compliance could arise." Appellant's Brief at 11. This argument is without merit. The State, as the moving party, had the burden of producing evidence which made a prima facie showing that timely notice was not provided to the Department. *See* T.R. 56; *Rogers v. R.J. Reynolds Tobacco Co.* (1990), Ind.App., 557 N.E.2d 1045, 1049–50, *trans. denied.* The State fulfilled that burden with the affidavit of Gerry Burton that the Department's records indicate it never received notice from Ammerman. Thereafter, the burden shifted to Ammerman to assert that he mailed the required notice to the Department. *See* T.R. 56(E); *Rogers,* 557 N.E.2d at 1049–50. Ammerman fails to make any such assertion under oath; therefore, the State's assertion stands unrefuted and there is no genuine issue of fact regarding notice to the Department as required by IC 34–4–16.5–6.

though fact sensitive, is a question of law for the court. *Collier,* 544 N.E.2d at 499; *Morris,* 528 N.E.2d at 471.

■ Because Ammerman substantially complied with the notice provisions of the Act, the trial court erred in granting the State's motion for summary judgment.

Ammerman sent notice to the Attorney General on September 23, 1985, which was within the 180-day time period prescribed by the Act. Although the notice was sent via express mail, *see* IC 34–4–16.5–11, it was sufficient notice to the Attorney General under the substantial compliance analysis.

As to the Department, the state agency involved, the record establishes that notice to the Department would not have served any purpose, that is, notice to the Department from Ammerman would have made no practical difference. The following exchange occurred during the deposition of Gerry Burton, the section manager of the department of legal services at the Department:

Q: Once the tort claim notice ... are [sic] communicated to the office of the Attorney General, what role, if any, does your department or your section have with respect to tort claim notices?

A: As far as a notice, itself, statutorily it ends at that point. Regarding only the notice now.

Q: Do you ever see or hear of that tort claim notice again after you transmit it to the office of the Attorney General or are you simply out of the loop entirely as far as that notice is concerned?

A: We are out of the loop ... the only time that I could foresee that we could come back into it would be maybe possibly to sign an affidavit or something of that nature that the trial attorney may require. But as far as day-by-day procedure on a given notice, that is the end of it.

Q: You don't investigate the material or the claim set forth in the tort claim notice, do you?

A: That's right. In the context of a legal investigation we do not. By nature, of course, if we get some massive notice of a major problem, then by definition we would forward information to other areas

within the department to check into it. Such as 30 or 40 blowouts on a given highway. We hope and work on the assumption that we have responded timely to that need. But we do a follow-up in that sense, which is simply a general maintenance follow-up.

\* \* \* \* \* \*

Q: Correct me if I'm wrong. As I went through the files of the [Department's] card catalog, I reached a conclusion that with respect to prelitigation procedures or steps, your department really is nothing more than a receiver of, a warehouser of and a transmitter of tort claim notices to the office of the Attorney General. You don't do anything with them other than receive them, store them and transmit them; is that correct?

A: I think substantially that is a correct statement. Some people refer to us as a conduit.

Supp. Record, Burton Deposition at 20–21, 44.

■ This undisputed testimony establishes that the purposes of the Act, to inform the governmental agency involved of the accident and surrounding circumstances "so that [the agency] may investigate, determine its possible liability, and prepare a defense to the claim" and to "requir[e] a claimant to announce his intention to assert a claim," *Morris,* 528 N.E.2d at 471, would not have been furthered by notice to the Department in this particular case, as the Department would neither have investigated nor defended against the claim had it been given notice. The validity of this conclusion in this case is underscored by the fact that the Attorney General both investigated Ammerman's claim and engaged in settlement negotiations with him.

In reaching this holding, we recognize that in *Galovick v. State* (1982), Ind.App., 437 N.E.2d 505, 508, this court affirmed the grant of summary judgment for the State because the plaintiff had sent notice only to the Attorney General. However, *Galovick* is distinguishable from the instant case because in *Galovick* the plaintiff failed to make a prima facie case of substantial compliance,

which must include, for summary judgment purposes, uncontradicted evidence that the relevant state agency would not have had any role in investigating or defending against the claim. Instead, the undisputed facts in this case are analogous to those in *Baxter*, 593 N.E.2d 1280. Baxter was injured in an automobile accident with a truck owned by the City of Tipton. The City's insurance company received a loss report regarding the accident, commenced an investigation, and contacted Baxter regarding settling his claim. Baxter failed to provide the required notice to the appropriate city official or department. When Baxter's attorney contacted the insurance company requesting that the City admit liability for the accident, she was told that they would not "honor any loss" because Baxter had failed to comply with the notice provision of the Act. *Id.* at 1281.

Baxter filed suit, and the City sought summary judgment based on Baxter's failure to comply with the Act's notice provisions. The trial court denied the City's motion; this court affirmed that ruling on appeal. In so doing, this court agreed that there had been substantial compliance with the Act in that the purposes of the Act had been fulfilled; the City's insurer had all the necessary information regarding the accident and Baxter's injuries, had conducted an investigation, and had indicated a willingness to settle with Baxter. *Id.* at 1283.

All the factors present in Baxter are present here as well. Thus, the trial court erred in determining that, as a matter of law, Ammerman's timely notice to the Attorney General did not constitute substantial compliance with the notice provisions of the Act. It was therefore error for the trial court to grant summary judgment to the State on this issue.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

SULLIVAN, J., concurs, with separate opinion.

STATON, J., dissents, with separate opinion.

SULLIVAN, Judge, concurring.

It is clear that notice was not sent to the Department of Highways. Furthermore, I am unable to accept appellant's invitation to infer that such notice was in fact sent. The Tort Claims Act requires such notice. Here, however, the testimony of Mr. Burton justifies the holding of the majority.

Mr. Burton clearly stated that notice to the Department would have been meaningless in that it would merely have been forwarded to the Attorney General and that the Department would not have initiated or conducted any investigation or take other action as a result of such notice.

*Galovick v. State* (1982) 1st Dist., Ind.App., 437 N.E.2d 505, quoted and relied upon *Geyer v. City of Logansport* (1977) 267 Ind. 334, 370 N.E.2d 333. In *Geyer*, despite actual notice to and investigation by the City, the failure of plaintiff to send notice to the governmental agency was fatal. Subsequently, however, in *Delaware County v. Powell* (1979) 272 Ind. 82, 393 N.E.2d 190, also cited in *Galovick*, our Supreme Court softened its position and held that if the purpose of the statute, i.e., opportunity to investigate, was served, facts might be adduced to show either substantial compliance with the statute or waiver or estoppel on the part of the agency. Nevertheless, the *Galovick* court held that there must be some attempt to comply with the notice statute. The First District decision did not provide relief for a plaintiff where notice, though not attempted, would not have given rise to an agency investigation or other action. It purely and simply held that notice to the Attorney General is inadequate and that some notice to the agency itself must at least be attempted. *See also Indiana Department of Public Welfare v. Clark* (1985) 1st Dist., Ind.App., 478 N.E.2d 699. Only in that event could substantial compliance be found.

I do not believe *Galovick* or *Clark* are distinguishable, but in light of *Delaware County v. Powell, supra,* and *City of Tipton v. Baxter* (1992) 4th Dist., Ind.App., 593 N.E.2d 1280, I would decline to follow *Galovick* or *Clark*. Where as here, no useful purpose would be served by notice to the agency, I would hold that failure to comply

with the notice requirement of the Tort Claims statute is not fatal to the claim. This is not to say that the plaintiffs have substantially complied with the statute; rather, failure to provide or even attempt to provide notice does not frustrate the purpose of the notice provision. It is, therefore, perhaps more accurate to say that the agency has waived the plaintiffs' non-compliance.

To be sure, most, if not all agencies, other than the Department of Highways, might well initiate or take some action relative to the claim other than to merely forward the notice to the Attorney General. Be that as it may, the Department here was not prejudiced and plaintiffs claim should proceed to be heard or be otherwise disposed of. I therefore concur.

STATON, Judge, dissenting.

I dissent from the Majority Opinion and the Concurring Opinion for these reasons:

1. Both opinions rely on the testimony of Gerry Burton of the Highway Department to establish substantial compliance and that the purpose of the statute has been satisfied. A careful reading of the testimony reveals that the leading questions and not the answers are the basis of the Majority's substantial compliance conclusion.

2. *Galovick v. State* (1982), Ind.App., 437 N.E.2d 505, *reh. denied,* is not distinguishable from the appeal under consideration. For the reason stated above, there was no showing of substantial compliance; therefore the trial court should be affirmed.

3. *City of Tipton v. Baxter* (1992), Ind. App., 593 N.E.2d 1280 does not have all the factors of the present appeal as suggested by the Majority. First, a different notice statute is involved—IC 27–1–29. Secondly, Gerdes, the claim examiner for the insurance company, had paid for the property damage involved in Baxter's accident leaving only the personal injury part of the claim to be settled. No settlement was made of any part of Ammerman's claim. In fact, the claim was denied by the Attorney General.

When reviewing the testimony cited by the Majority Opinion, a careful reading and analysis discloses the true substance of Gerry Burton's testimony. The questions were carefully crafted to deal only with the tort claim notice and the path that it travels. It is clear that the questions are directed to the witness in this setting "... after you transmit it to the office of the Attorney General or are you simply out of the loop entirely as far as that notice is concerned?" Supp. record, p. 20. The next question and answer underlines the intended diversions by the interrogating attorney:

Q: You don't investigate the material or the claim set forth in the tort claim notice, do you?

A: That's right. *In the context of a legal investigation we do not.* By nature, of course, if we get some massive notice of a major problem, then by definition we would forward information to other areas within the department to check into it. Such as 30 or 40 blowouts on a given highway. We hope and work on the assumption that we have responded timely to that need. But we do a follow-up in that sense, which is simply a general maintenance follow-up. (Emphasis added.)

The witness is clearly trying to separate the Attorney General's legal investigation after receiving the notice from the Department's investigation of an accident upon receiving the notice. He testified that his department investigates to see if the accident presents a major problem that would require a timely response. He further indicated that his department does a follow-up on the information. This department investigation is the purpose of the statute. Notice is provided to the State so that it can not only investigate the scene of the accident but take corrective action if needed to protect the public from further injury. For example, if the Department had an opportunity to examine its records to determine the number of accidents at this particular railroad crossing, future deaths and personal injuries could have been avoided. In the present case, this purpose of the notice was not satisfied. There was no substantial compliance with the statutory no-

tice. The Majority gleans substantial compliance from the questions put to Gerry Burton rather than the substance of his answers.

The Attorney General's investigation is primarily concerned with the interviewing of witnesses and the determination of liability of the State. The clever questions directed to the witness steered around the heart of the question—was there substantial compliance. The answer is no. Why, because you must conclude that the Department does nothing upon receiving the notice except to send it on to the Attorney General's office. This is obviously not true.

*Galovick v. State* (1982), Ind.App., 437 N.E.2d 505, *reh. denied,* is not distinguishable from the case before us. In *Galovick,* after injury from a swimming accident, notice was sent only to the Attorney General of Indiana within the 180 day period provided by the statute. The same circumstances exist in the present case. The Majority, after reading the testimony of Gerry Burton concludes that substantial compliance had been met because the Highway Department would have done nothing but send the notice to the Attorney General; therefore, the purpose of the statute had been served. My discussion of Gerry Burton's testimony above shows conclusively that the purpose of the statute had not been satisfied. Substantial compliance was no more satisfied in the present case than in *Galovick.*

*City of Tipton v. Baxter* (1992), Ind.App., 593 N.E.2d 1280 does not fit like a glove to justify a reversal of the trial court. First, the claim in *Baxter* had been partially settled by the insurance company. Gerdes, the claim examiner for the insurance company, had already paid the property damage claim. The only part of the claim remaining was the personal injury damages and the amount of those damages.[5] Too, the evidence clearly indicated that the investigation of the accident had been completed. *Baxter* doesn't fit like a glove because: notice had been given in *Baxter;* an extensive investigation had been made on behalf of the City; liability had been recognized by the insurance company;

5. Fecher backed a City truck into a vehicle owned by Baxter Heating & Air Conditioning.

and the claim had been paid in part by the insurance company.

For the above reasons I dissent. I would affirm the judgment of the trial court.

Derek A. Baxter, a passenger, was injured.