Gene and Dorothy CRANSTON,
Appellants (Plaintiffs),

v.

The WESTON COUNTY WEED AND
PEST BOARD, Appellee
(Defendant).

No. 90–65.

Supreme Court of Wyoming.

Feb. 14, 1992.

Debra J. Hein, Newcastle, for appellants.

Tracy Hunt, Newcastle, for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE, GOLDEN, JJ., and HANSCUM, District Judge.

GOLDEN, Justice.

Appellants Gene and Dorothy E. Cranston (Cranstons) appeal from the trial court's orders dismissing their complaint against the Weston County Weed and Pest Board (WCWPB) and dismissing their amended complaint against the Weston County Board of Commissioners (Commissioners). The trial court's dismissals were based on the Cranstons' failure to serve a separate notice of claim on WCWPB, to show that Weston County owed them a duty of care, and to prove that the county had insurance available to cover appellant's claim against Weston County.

Appellants raise the following issues:

A. Whether the Weston County Weed and Pest [Board] is a "governmental entity" requiring separate service of a Notice of Claim?

B. Whether Weston County Weed and Pest [Board] is estopped from asserting that it was a separate and distinct governmental entity from the Weston County Board of Commissioners?

C. Whether Appellants substantially complied with W.S. 1–39–113 so as to confer subject matter jurisdiction upon the district court?

D. Whether the Weston County Commissioners waived their immunity from

liability by purchasing liability insurance?

E. Whether the Weston County Board of Commissioners owe a duty to Plaintiffs in this case?

We affirm the order dismissing appellants' suit against WCWPB, reverse the order dismissing appellants' suit against the Commissioners, and remand for further proceedings.

## FACTS

Appellants own a ranch adjoining state-owned property in Weston County. Historically, appellants' source of drinking water has been a well which pumps from an aquifer located beneath the surface of their property. Water from the aquifer has also been used for livestock purposes.

In August, 1987, after noticing that plants in his garden wilted when he watered them, Gene Cranston sent a sample of his tapwater to the Wyoming Department of Agriculture for testing. The test results showed that the water was contaminated with 18 parts per billion of Picloram (tradename "Tordon"), a herbicide used to control broadleaf weeds. The Department of Agriculture advised Cranstons that the amount of Tordon present in their water was sufficient to harm vegetable crops and broadleaf weeds. The Department recommended that the Cranstons find another source of drinking water.

The Cranstons notified the Wyoming Department of Environmental Quality (DEQ) of the contamination problem. After an investigation, the DEQ found that appellee WCWPB was responsible for spraying and applying pellets of the herbicide to the state land adjacent to and upgradient from the Cranstons' property. This herbicide polluted the groundwater from which the Cranstons obtained their drinking water. The DEQ issued a notice of violation to Weston County for the herbicide pollution.

Cranstons prepared a notice of claim against both the Commissioners and the WCWPB. The notice requested damages of $2 million based on various claims arising from negligent application of the herbicide by WCWPB employees. Cranstons sent a single copy of this document certified mail addressed to "Weston County Commissioners, Weston County Courthouse, Newcastle, Wy. 92701."

When the claim went unsatisfied, Cranstons filed suit in district court. Their complaint requested damages for negligence by the Commissioners and WCWPB. Both entities moved to dismiss the complaint, citing immunity under the Wyoming Governmental Claims Act and insufficiency of process.

The trial court found that WCWPB was a separate governmental entity which should have been served with a notice of claim before the suit; that the Commissioners could not be held vicariously liable for the acts and omissions of WCWPB under the doctrine of respondeat superior; that the complaint failed to allege that the County had liability insurance; and that no other exception to the Governmental Claims Act was applicable. The trial court dismissed Cranstons' complaint, but allowed them to file a claim with WCWPB if they could still do so during the limitations period. See W.S. 1–39–113 (June 1988 Repl.). If not, the court found no just cause for delay and stated it would enter judgment in favor of WCWPB.

Cranstons were given thirty days to file an amended complaint against Weston County. This complaint was required to allege that the Commissioners could be held liable because of insurance coverage. Cranstons were also given the opportunity to discover information about the county's insurance policies.

Cranstons were unable to file a claim with WCWPB because the two-year limitations period had expired; therefore, they appealed to this court that portion of the trial court's order granting judgment for WCWPB. Cranstons also filed an amended complaint, which included an allegation of insurance coverage, against the Commissioners. After a hearing the trial court granted the Commissioners' motion to dismiss the amended complaint. Cranstons appealed from that order, and we now con-

sider all of Cranstons' issues together in this appeal.

## STANDARD OF REVIEW

As a threshold question we must determine whether the trial court's orders were dismissals under W.R.C.P. 12(b)(6) or whether the motions to dismiss had been converted to motions for summary judgment by the court's consideration of material outside the pleadings.

The record reveals the following discussion between counsel and the court at the hearing on appellees' first motion to dismiss:

Mr. Hunt [counsel for appellees]: I have a letter that Mrs. Hein has agreed to stipulate to admission of which, it comes from the Farm Bureau Insurance Company, Mountain West Farm Bureau Mutual Insurance Company, whereby the attorney for that company has denied liability on the claims of which it is aware * * *. I offer that to the court to—

Ms. Hein [counsel for appellants]: No objection, Your Honor.

The Court: Okay.

That will convert this from a 12(b) motion to a motion for summary judgment then?

Mr. Hunt: In that it—

The Court: Looks at matters outside the pleadings.

Mr. Hunt: —outside the pleadings. That's okay with me.

Ms. Hein: That's not okay with me then. That's going to change it.

Apparently, no further discussion was held on whether appellees' motion to dismiss had been converted to a motion for summary judgment. Nor was any determination made on Cranstons' objection to conversion.

■ A motion for dismissal under W.R.C.P. 12(b)(6) converts to a motion for summary judgment if the trial court considers matters other than the pleadings. *Mostert v. CBL & Associates*, 741 P.2d 1090, 1097 (Wyo.1987). For a more thorough explanation of this concept, *see also Torrey v. Twiford*, 713 P.2d 1160, 1162–63 (Wyo.

1986). If the materials considered are affidavits attached to the motion, conversion occurs automatically. *Torrey*, 713 P.2d at 1165; W.R.C.P. 12(b). If affidavits have not been filed, but other materials are considered, such as discovery documents, conversion does not occur automatically. The court may still treat the motion as one for summary judgment, but the record must demonstrate that the parties had notice of the conversion and that the nonmovant had an opportunity to respond. *Torrey*, at 1164. *See also Kimbley v. City of Green River*, 642 P.2d 443, 445 (Wyo.1982), *appeal after remand* 663 P.2d 871 (Wyo. 1983).

■ In this case, the trial court considered nonaffidavit materials which were outside the pleadings. Counsel for appellees presented the court with a letter from their insurance company at the first hearing. Cranstons provided insurance information to the court at the second hearing. The question is whether Cranstons had notice which appears in the record of the court's intent to convert the motion to one for summary judgment.

The court's statements in the colloquy reprinted above were sufficiently ambiguous that they did not satisfy the notice requirement. Also, although Cranstons presented the court with their own materials outside the pleadings, the trial court never ruled on Cranstons' objection to conversion. Furthermore, its orders were captioned and worded as orders to dismiss rather than orders for summary judgment. Because the requirement of clear, unambiguous notice for conversion was not satisfied, we will treat the court's orders in this case as orders to dismiss rather than as converted orders for summary judgment.

We set forth concisely our standard of review of a trial court's order dismissing a complaint:

According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the com-

plaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." Dismissal is a drastic remedy, and is sparingly granted. *Matter of Paternity of JRW*, 814 P.2d 1256, 1259 (Wyo.1991) (quoting *Mostert v. CBL & Associates*, 741 P.2d 1090, 1092 (Wyo.1987)) (citations omitted).

## DISCUSSION

In Cranstons' first two issues, they argue alternatively that either WCWPB is not a separate governmental entity entitled to notice of claim under the Wyoming Governmental Claims Act, or that WCWPB is estopped from asserting that it is a separate governmental entity.

■ Governmental entities and their public employees in Wyoming are immune from tort liability, except as provided for in W.S. 1–39–101 et seq. (June 1988 Repl.) (Wyoming Governmental Claims Act). *See* W.S. 1–39–104(a). Actions against governmental entities may only be pursued if brought in procedural and substantive compliance with the act. *See Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 708–09 (Wyo.1987). One such procedural requirement is that claimants give notice of their claim to the governmental entity in order to maintain an action under the act: "No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission * * *." W.S. 1–39–113.

■ Failure to give notice within the two-year claim period of a claim which falls under the statute acts as an absolute bar to suit. *Duran v. Board of County Commissioners of Sweetwater County*, 787 P.2d 971, 972–73 (Wyo.1990) and cases cited therein. A litigant's failure to file a timely claim deprives the district court of subject matter jurisdiction. *Dee v. Laramie County*, 666 P.2d 957 (Wyo.1983).

■ It is undisputed in this case that Cranstons did not present a separate notice of claim to WCWPB within the two-year claim period. The only notice given was the certified letter mailed to the Commissioners. Cranstons argue, however, that this notice to the Commissioners gave sufficient notice to WCWPB of their claim because WCWPB is not a separate "governmental entity" from Weston County.

Cranstons make several arguments as to why the WCWPB should not be considered a separate governmental entity. First, they note that it is not included within any of the enumerated categories in W.S. 1–39–103 (June 1988 Repl.). For purposes of the Governmental Claims Act, *governmental entity* "means the state, University of Wyoming or any local government." W.S. 1–39–103(a)(i). *Local government* "means cities and towns, counties, school districts, joint powers boards, airport boards, public corporations, community college districts, *special districts and their governing bodies*, all political subdivisions of the state, and their agencies, instrumentalities and institutions." W.S. 1–39–103(a)(ii) (emphasis added).

Cranstons argue that since weed and pest control districts are not included as a separate entity in the definition of "local government," the legislature recognized them as a part of county government for purposes of the statute. However, we believe that the WCWPB is included in this statute as a "special district [or its] governing body." Accordingly, Cranstons' first argument fails as a matter of law.

Cranstons next argue that WCWPB is not a separate entity because it cannot operate without the authority of the county commissioners. Cranstons note that the Commissioners appoint the board members for WCWPB and that WCWPB cannot set its own budget or raise taxes on its own to fund itself. Cranstons conclude that WCWPB is the same governmental entity as Weston County. Our examination of the pertinent statutes relating to weed and pest control boards leads us to the opposite conclusion.

WCWPB is a county weed and pest control district created under the auspices of the Wyoming Weed and Pest Control Act of 1973, 1973 Wyo.Sess.L. ch. 30 § 1. This

act is found within our statutes, W.S. 11–5–101 et seq. (June 1989 Repl.). Under the act, all land within the boundaries of Wyoming is included in weed and pest control districts whose boundaries are coexistent with the county in which the district is located. W.S. 11–5–103. Each weed and pest control district is operated by a district board. W.S. 11–5–105. The board members are appointed by the county commissioners of each district from a list of nominations submitted by local landowners. W.S. 11–5–104(a). County commissioners have the power to remove a director for "repeated unexcused failure to attend meetings or for refusal or incapacity to act as a district board member." W.S. 11–5–104(e).

County commissioners are directed to levy an annual tax to carry out the act. This tax, which is levied on all property in the district and cannot exceed one mill on each dollar of assessed value, is specifically defined as "not part of the general county or city mill levies." W.S. 11–5–111. Any funds appropriated by the legislature for weed and pest control are allocated by an allocation committee which consists of the Commissioner of Agriculture, three members appointed by the state weed and pest council, and one member of the Wyoming Board of Agriculture. W.S. 11–5–113(a).

The above statutes indicate that weed and pest control boards are separate entities from the counties in which they are located. Although the county commissioners appoint members to the board, their appointment and removal powers are limited. They can only appoint from a list of persons nominated by local landowners, and they can only remove board members for failure or incapacity to carry out their duties. Furthermore, although the county commissioners levy the tax and set the amount which is to be levied for the board, the tax itself is separate from city or county levies. Any legislative appropriations are allocated by the allocation committee without the need to seek the county commissioners' authorization.

W.S. 11–5–105(b) enumerates the powers of local weed and pest districts. The deciding factor for us is the authorization for local districts to "sue and be sued." W.S. 11–5–105(b)(i). If a district is given statutory authority to be sued in its own name, it seems only logical that it is a separate governmental entity and, absent evidence to the contrary, it is entitled to notice under the Governmental Claims Act.[1] Our review of statutory authority convinces us to hold that a weed and pest control district under Title 11 is an independent governmental entity for purposes of the Governmental Claims Act.

Cranstons next argue that WCWPB is estopped in this case from claiming that it is a separate governmental entity. They rely on the elements of estoppel from a statute of limitations set forth in *Taylor v. Estate of Taylor*, 719 P.2d 234, 240 (Wyo. 1986): "The delay in filing the action must be induced by the defendant; the defendant must have misled the plaintiff; and the plaintiff must have acted on the misinformation in good faith to the extent that he failed to pursue his action in a timely manner."

Cranstons argue that WCWPB had actual notice of the claim against it prior to the expiration of the two-year claim period, that WCWPB led Cranstons to believe that it had notice, and that they relied on this belief in good faith in not filing their claim with WCWPB. They point to several elements in the record which they claim support this contention. First, a letter from an insurance analyst concerning coverage dated October 25, 1988, states that WCWPB was consulted regarding the claim. Second, the county attorney represented both appellees throughout the case. Third, the DEQ served WCWPB with a Notice of Violation which described the harm which is the subject of this case.

While these elements certainly establish that WCWPB had notice during the claims period that Cranstons thought they had a claim against WCWPB, they do not show that the delay in filing was induced by

---

**1.** Cranstons must recognize this principle to some extent, since they separately served both Weston County and the WCWPB in the district court suit which became this case.

WCWPB, or that WCWPB misled them as to the need to file a claim. This court has addressed a similar estoppel argument in *Duran:*

> Duran [appellant] relies upon the mere pendency of negotiations as the basis for employing the doctrine of estoppel, both in her brief in this court and in her defense to the motion to dismiss in the district court. Such an assertion is not of itself sufficient to establish an estoppel. * * * There was no assertion of representation by the insurer relied upon by appellant. As a matter of law, what is asserted is insufficient to require that the issue be presented to a fact finder.

*Duran,* 787 P.2d at 974–75 (citations omitted). In this case, the representations which Cranstons bring to our attention are insufficient as a matter of law to establish that WCWPB misled them or that the delay in filing was due to WCWPB's actions. Our review of the complaint in the light most favorable to Cranstons demonstrates that there is no set of facts alleged which, if proved, could establish the last two elements of an estoppel claim here.

■ Cranstons' third issue is whether they substantially complied with the notice provision of the Governmental Claims Act by sending the notice of claim to the Commissioners. Cranstons argue that since WCWPB had actual notice of their claim within the two-year statutory period, the purpose of the notice provision was served.

Generally, service of a notice of claim on one governmental entity is not sufficient to give notice to other potential defendants. *Cf. Davis v. City of Casper,* 710 P.2d 827 (Wyo.1985) (notice of claim sent to City of Casper but not Natrona County; dismissal upheld as to County for failure to send notice of claim). In this case, however, Cranstons assert that since both entities had the same attorney, and there is evidence that WCWPB had actual notice of the claim, the notice sent to Weston County substantially complied with the statute.

Cranstons cite *Rissler and McMurry Company v. Wyoming Highway Depart-*

*ment,* 582 P.2d 583 (Wyo.1978), a case in which we allowed the plaintiff to assert substantial compliance with a notice of claims statute. In *Rissler,* the plaintiff submitted a claim to the Highway Department in compliance with a departmental regulation and then negotiated with the Highway Department until after the deadline for filing notice of claim with the state auditor had passed.[2] We held that the purposes of the claims statute, timely notice to the state of claims against it, had been fulfilled by notice of claim to the Highway Department, particularly since plaintiff's claim had opened the way for settlement negotiations between the parties.

We distinguish *Rissler* from this case, however. In *Rissler,* the plaintiff sent a claim to a governmental entity whose published claims procedure contained an independent notice requirement. In this case, there was no such independent procedure on which Cranstons erroneously relied. Also in *Rissler,* the Highway Department entered into negotiations with the plaintiff, which suggested to the plaintiff that it was following the appropriate claims procedure. Here, no such negotiations were entered into between Cranstons and WCWPB. There is simply no consequent "gamesmanship" or bad faith by the governmental entity here such as the *Rissler* decision sought to avoid. *Rissler,* at 586.

Furthermore, that WCWPB and Weston County shared the same attorney and WCWPB had actual notice of Cranstons' claim do not, in and of themselves, excuse compliance with the notice provision of the statute. WCWPB had a right to rely on Cranstons' compliance with the statute, particularly in view of the cases cited above which state that compliance is jurisdictional. WCWPB could not be said to be on official notice of the claim until Cranstons filed such notice as prescribed. We will not excuse strict compliance with the procedural norms of the Governmental Claims Act except in compelling circumstances. We hold that Cranstons did not substantial-

---

**2.** Notice of claim was required under W.S. 9–2–332 (1977), which required persons having claims against the state to submit them within one year to the state auditor.

ly comply with the Governmental Claims Act claim procedure as to their claim against WCWPB. We affirm the trial court's dismissal as to WCWPB for Cranstons' failure to send proper notice under W.S. 1–39–113.

■ Cranstons' final two arguments relate to their claim against Weston County. We will consider their last argument first, in order to discuss the arguments in logical order. Thus, we first consider whether the County owed them a duty of care.

Cranstons argued in their amended complaint that the Commissioners were negligent in their hiring of the WCWPB board members and in failing to properly supervise WCWPB's actions. The trial court determined that the Commissioners did not owe a legal duty of care to Cranstons for the injuries stated. It dismissed their amended complaint for failure to state a claim.

■ We agree that Cranstons' amended complaint does not state a claim for negligent supervision. The Commissioners had no duty to supervise WCWPB or its employees under the applicable statutes. However, we hold that their amended complaint does state a claim under the theory of negligent hiring.

We have found no published Wyoming case which sets out the elements of a claim by a nonemployee third party for negligent hiring. This tort was presented to the court in *Blake v. Rupe*, 651 P.2d 1096, 1103 (Wyo.1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983), but the case was resolved on other grounds. We accept the special definition of this cause of action set forth in Restatement (Second) of Agency § 213 (1958):

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

\* \* \* \* \* \*

(b) in the employment of improper persons or instrumentalities in work involving the risk of harm to others.

■ In this case, the Commissioners were not "conducting an activity through servants or other agents" when herbicide was applied to the state land. The employees who did the application were employees of WCWPB, not of the Commissioners. However, only the Commissioners had the statutory power to appoint the board members who actually did the supervising. That statutory power carried with it a duty not to negligently hire board members. Therefore, a jury could reasonably find that the Commissioners' failure to properly appoint board members was the proximate cause of Cranstons' injuries. *See Stephenson v. Pacific Power and Light Co.*, 779 P.2d 1169, 1178 (Wyo.1989); *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 87 (Wyo.1989) (Urbigkit, J., specially concurring and dissenting); *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo.1983) (proximate cause is a question of fact for the jury unless reasonable minds could not disagree.).

Appellee Commissioners argue that since the statute requires them to select board members from a list of nominated candidates, and since they can only remove board members for neglect of their duties, not incompetence, they cannot be held responsible for negligently choosing board members. See W.S. 11–5–104. These contentions, if supported by appropriate facts in this case, might justify the entry of summary judgment. However, at this stage of the proceedings there are still conceivable sets of facts under which Cranstons could establish their claim: if, for example, there were far more applicants for the board than positions and the Commissioners negligently failed to properly screen the applicants. Under the circumstances, we cannot uphold the order dismissing Cranstons' amended complaint, because there are factual circumstances in which they could conceivably be entitled to recover on their claim.

In sum, we hold that Cranstons' amended complaint states a claim for negligent appointment of the board members by the Commissioners. On remand Cranstons will have the burden of establishing that the Commissioners were negligent in appointing the board members, that the board

members or their servants negligently caused their appellants' injuries, and that the failure to properly appoint the board member was the proximate cause of their injuries.

■■■ We next consider Cranstons' argument that the Commissioners waived their immunity to liability by purchasing liability insurance. W.S. 1–39–118(b)(i) provides that a governmental entity may extend its liability by purchasing insurance: "If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage."

The trial court in this case found that there was insufficient proof to establish that the county had liability insurance which would have indemnified the Commissioners against the Cranstons' injuries and thereby waive immunity under the Governmental Claims Act. However, in considering the motion to dismiss, the trial court should have made its findings based solely on the allegations of the amended complaint. The only question about insurance coverage at the dismissal stage was whether the Cranstons pled it and thereby avoided Rule 12(b) dismissal on the basis of sovereign immunity. If the complaint pled applicable insurance coverage, it should not have been dismissed on its face. The record shows that the amended complaint did plead applicable liability insurance:

> "14. Defendant COUNTY has had insurance coverage in effect for the period of time covered in this Complaint which is 1974 through the present, and are [sic] therefore liable to the extent of said insurance coverage."

Since dismissal is inappropriate, we reverse and remand as to the complaint against Weston County to allow development of the record concerning insurance coverage. The trial court should see to it that the record is more fully developed, if necessary, before taking further action on the insurance issue. *See Pickle v. Board of County Commissioners of Platte County*, 764 P.2d 262, 266 (Wyo.1988).

HANSCUM, District Judge, concurring.

I concur in the affirmance of the order dismissing Cranstons' claim against WCWPB on the basis of this court's prior rulings on the technical grounds of defective notice. In light of this court's consistent position requiring strict compliance, I subscribe to the majority's reasoning to reach this rather harsh result.

Hesitating, I have to concur in the reversal of the order dismissing Cranstons' amended complaint against the Weston County Board of Commissioners, only on the basis that the record is devoid of evidence that the insurance policy *could not* provide coverage for the claim at issue here. I suspect that is the case based on reasonable interpretations of the record and the trial court's observations on that point, but that is a matter for another day in the trial court.

URBIGKIT, Chief Justice, dissenting.

I dissent from the portion of the majority that affirms the February 1990 order dismissing the complaint under W.R.C.P. 12(b)(6) for failure to state a claim in regard to the Weston County Weed and Pest Control Board (Weed and Pest District) by decision that insufficient notice had been given to validate that claim against the governmental entity under the Wyoming Governmental Claims Act.

This appeal presents a major complexity, albeit one that is unaddressed by either appellants or appellee. With disposition resulting from action of the trial court on a W.R.C.P. 12(b)(6) dismissal motion, allegations of the complaint are assumed to be true. *Fiscus v. Atlantic Richfield Co.*, 742 P.2d 198 (Wyo.1987). Furthermore, not only this court, but every American jurisdiction follows a unanimous rule that facts for W.R.C.P. 12(b)(6), or summary judgment, are not created by allegations contained in counsel's motion argument. *Nicholls v. Nicholls*, 721 P.2d 1103 (Wyo.1986). We cannot accept contentions as determined about the operative facts because counsel for appellee included statements of what he thought had occurred within his

argument on the motion to dismiss. This was a W.R.C.P. 12(b)(6) resolution and not a summary judgment decision. *Torrey v. Twiford*, 713 P.2d 1160 (Wyo.1986).

The actual "facts" for review of this W.R.C.P. 12(b)(6) determination are:

A. Allegation in the complaint, which is taken to be true, stating:

11. A Notice of Claim pursuant to WSA 1-39-113, was served on the COUNTY and the WCWP [Weston County Weed and Pest Board] by the plaintiffs on September 20, 1988. A copy of said claim is attached hereto and incorporated by reference herein and marked as Exhibit C.

B. The notice of claim attached to the complaint stating in part:

Pursuant to Wyoming Statutes Section 1-39-113, this claim is presented to the Weston County Commissioners, the Weston County Weed and Pest Board and all employees acting under their respective authority.

C. There is here, which was not available at least in written form for the trial court decision, what we could consider to be a concession of fact by recitation in the appellants' brief:

A Notice of Claim directed to Appellee County and Appellee WCWP was sent by certified mail to the official Weston County address of 1 W. Main Street, Newcastle, Wyoming on September 19, 1988.

The appellants' brief further stated facts, which in part are demonstrable in the record, regarding the response received:

The Appellants received no correspondence or acknowledgment of the claim until a letter dated October 25, 1988 was sent by David McInerney, Insurance Analyst from the Department of Administration and Fiscal Control—Purchasing and Property Control Division.

The letter stated the following:

"The above mentioned claim has been forwarded to our office for reply. Both of the above entities are members of the Local Self Insurance Pool. They joined the Pool in December of 1986. After review [and] discussion of the Claim with the Weed and Pest personnel, we do not feel that they were negligent in their spraying operation speaking of the time from December, 1986 to the present. We, therefore, feel that we must deny your clients claim."

The letter was also copied and sent to Paulette Thompson, Weston County Clerk and to John Fordyce, Weston County Weed and Pest Supervisor.

The statement regarding notice given contained in the majority opinion comes from appellee's trial court motion to dismiss which in effect made that contention like it was a proven statement of fact. However, there is absolutely nothing factually presented of any kind in this record by appellee about anything let alone what notice was received which can create factual evidence and certainly not to dispute the allegation of paragraph eleven of the complaint. Likewise, there is nothing to demonstrate whether a copy of the claim was forwarded to the Weed and Pest District by county officials so that it was then "filed" in the records of both governmental entities.[1]

---

1. If counsel for appellee had been sworn and then testified, one would have cause to expect from what little documentation is provided that appellants probably did mail the jointly addressed notice to the County Courthouse, Weston County, Newcastle, Wyoming. (Actually, that is what counsel for appellants told the trial judge when he asked her at the W.R.C.P. 12(b)(6) motion hearing what had been done.) Applying a reasoned degree of almost certain probability, one would believe that the county officials made a copy of the notice and forwarded it to the Weed and Pest District or to its supervisor, John Fordyce. It is also determinable from this record that either one or both of the county and the Weed and Pest District then sent notice of the claim to the local governmental self insurance pool in Cheyenne, Wyoming and that the response to the claim by the self insurance pool addressed to appellants was furnished to both the county clerk of Weston County and to John Fordyce.

There is another technical circumstance about this record in that all of the documentation found was not filed with the original complaint. Insurance policy information and the letter from the self insurance pool to appellants with copies to the county and Weed and Pest District

## SEQUENCE OF EVENTS

In the summer of 1987, Gene and Dorothy E. Cranston, ranchers in Weston County, Wyoming, first observed garden wilting problems. Test results obtained from the Wyoming Department of Agriculture revealed that herbicide field spray was contaminating their water sources. The next summer, the United States Geological Survey retested and furnished reports to the ranching family and to the field supervisor of the Weed and Pest District confirming the continued pollution. As a result, the notice of claim was submitted to the Weed and Pest District and the Weston County Commissioners in September 1988. The notice of claim was sent certified mail and apparently mailed, in accord with the cross-examination of counsel by the trial court during the hearing, to the County Courthouse, Weston County, Newcastle, Wyoming.

The notice given was followed in October 1988 with a response from a representative of the self insurance pool, a state agency, in behalf of both the county and the Weed and Pest District. Copies of the state fund response were provided to both the county and the Weed and Pest District supervisor. Suit was then filed in September 1989. There is no question, despite the status of this file creating a motion to dismiss decision, that the Weed and Pest District had general notice of the proposed claim and specific notice of the filed claim in 1988. The principal factual issue, indeterminate in this record, is whether the county actually provided the Weed and Pest District a copy of the filed document constituting the formal claim under the purview of the Wyoming Governmental Claims Act, W.S. 1–39–101 through 1–39–120, and specifically W.S. 1–39–113.[2]

## DISCUSSION

With this background of the record, sketchy at best, and a significant issue to be resolved regarding a technical definition of "filing" whether received from one source or another, at worst, I would accept a reasonable standard for compliance with the notice requirement. The standard of reason for whatever kind or character, including some obvious example of present governmental conduct in law breaking, which I will not accept as appropriate in even contemporary society, but for here, some reasonable compliance should be, in my opinion, all that we do require. This court has faced in recent time a near blizzard of adequacy of service and appropriateness of notice proceedings, *Gookin v. State Farm Fire & Casualty Ins. Co.*, 826 P.2d 229 (Wyo.1992) (No. 91–130, decided 2/3/92); *In Interest of DG*, 825 P.2d 369 (Wyo.1992), including others very recently published. *Colley v. Dyer*, 821 P.2d 565 (Wyo.1991); *Dye v. Fremont County School District No. 24*, 820 P.2d 982 (Wyo. 1991).

Realism and particularism require different practical approaches and there is a time when I find reliance on technicalities, if not unnecessary, to be senseless. This is such a case and, consequently, I dissent. What

---

were filed in January 1990 without any accompanying affidavit or designation of the particular basis for filing. These documents were filed with the trial court approximately a month before the order dismissing the complaint was entered so that apparently the material was considered by the trial court for the February 22, 1990 W.R.C.P. 12(b)(6) dismissal order. The trial court stated in the referenced order:

> THE COURT FURTHER FINDS that only one copy of a Notice of Claim was served by certified mail upon the County Commissioners addressed to:
>
> Weston County Commissioners
> Weston County Courthouse
> Newcastle, Wyoming

There is absolutely no source for factually making that finding, except by acceptance of an allegation contained in the motion to dismiss which had been previously filed on October 10, 1989 and counsel's response to the question asked at the trial court's W.R.C.P. 12(b)(6) hearing. Actually, supplementation of the complaint by subsequent facts renders the proceeding inappropriate for decision as a motion to dismiss. *Torrey*, 713 P.2d 1160.

2. It is unfortunate that at the hearing, while the trial court was examining counsel for appellants regarding the mailing of the notice, that a similar examination was not made of counsel for appellee to establish for the motion to dismiss decision then underway what notice was actually received by the Weed and Pest District, by what documents, from whom and when.

we do here in differentiating the Weed and Pest District where it must have received the formal claim notice, since its insurance carrier was advised of the claim and then denied the same, fails to distinguish for me between the small town office address for the Weed and Pest District for notice purposes or the general address of the county commissioners at the county courthouse. I do not seek in dissent to compare the conventional insurance company notice and estoppel or waiver concepts to this situation. Actual notice and real receipt by the Weed and Pest District and legal notice to the officers of the county at the county courthouse should suffice. One need not dispute the overt fact that the Weed and Pest District was a governmental entity to continue to reject appropriateness of the sustained motion to dismiss on the absence of notice.

One of the more reasoned yet cynical observers of the Wyoming legal scene describes the general practice of law to be a continuous walk across a mine field. Procedural default, waiver and missed deadlines become not just the deadfall of the practice, but limitations for justice to the client. Increasingly, we fail to reach substance where exploding pre-arranged booby traps in the attempted effort preclude reasoned and responsible justice to the litigants. I write forcefully in this case because obviously the Weed and Pest District had notice, had an opportunity to defend, and did defend against what may be a significant and proper legal liability for negligence in over-spray damage to the ranching family.

We do not deal here with the jurisdictional characteristics of lack of service of process to provide jurisdiction for the court system. See Gookin, 826 P.2d 229 (No. 91–130, decided 2/3/92) and Colley, 821 P.2d 565. This is a filed notice case and what we know is notice was provided and likely filed. Cf. Awe v. University of Wyoming, 534 P.2d 97 (Wyo.1975).

I do not disagree with the majority in recognizing the statutory inclusion of the Weed and Pest District within the definition of W.S. 1–39–103(a)(i) and (ii) (Supp. 1991). What I do say is that the subservient entity, the Weed and Pest District, may and probably did receive notice when it was sent to the county and particularly if actually received by the Weed and Pest District thereafter. In Duran v. Board of County Com'rs of Sweetwater County, 787 P.2d 971 (Wyo.1990) and Dee v. Laramie County, 666 P.2d 957 (Wyo.1983), no formal notice was given, which is different from this case where notice was explicitly given, to leave only the question of how it was mailed, whether actual notice was received and whether a copy was on file in the records of the involved governmental entity.

The actual notice establishes for purposes of this dissent what initially occurred in communicative effort and the sole basis for approving the result thereafter is that mailing to an address, either Post Office Box 411 or 25 Fairgrounds Road, was required instead of the Weston County Courthouse, 1 West Main, Newcastle, Wyoming 82701.[3] In technical application, it is obvious that the statute, W.S. 1–39–113(c) (Supp.1991), requires "fil[ing] at the business office of [the] entity," but does not specifically state how presentation must be made for that filing to occur. The answer is obvious. In order to file, they have to get it and, in this case, there is nothing to suggest that the Weed and Pest District did not receive it and did not have it on file. Any conclusion by appellee that lack of mailing to some address different than the county courthouse is sufficient alone to resolve the question of filing does not, for me, reach any relevance in statutory application.

Obviously, one of the difficulties with all of this is a record which fails to provide evidence of what did occur and in no way suggests that the Weed and Pest District did not receive a copy of the claim or specifically how they did, if it occurred.

---

**3.** Of course on this record, we do not know whether Post Office Box 411 is different from the address for mail to the county offices and

we do not know whether there is actual mail delivery to the listed location, 25 Fairgrounds Road, Newcastle, Wyoming.

There is no question in this incongruent record about the Weed and Pest District receiving notice of the claim prior to the date suit was filed, September 19, 1989, by virtue of the recognition and response afforded by the state sponsored self insurance pool letter, which stated:

Department of Administration
and Fiscal Control

Purchasing and Property Control Division

October 25, 1988
Debra J. Hein, Attorney at Law
P.O. Box 884
Newcastle, WY 82701

Re: Claim of Gene and Dorothy E. Cranston vs. Weston County and Weston County Weed & Pest

Dear Ms. Hein:

The above mentioned claim has been forwarded to our office for reply. Both of the above entities are members of the Local Government Self Insurance Pool. They both joined the Pool i[n] December, 1986. After review and discussion of the claim with the Weed and Pest personnel, we do not feel that they were negligent in their spraying operation speaking of the time from December, 1986 to the present. We, therefore, feel that we must deny your client's claim.

Sincerely,

/s/

David McInerney
Insurance Analyst

xc: Paulette Thompson, Weston County Clerk
1 West Main
Newcastle, WY 82701

xc: John Fordyce, Weston County Weed and Pest Supervisor
P.O. Box 411
Newcastle, WY 82701

John Fordyce, as an agent of the Weed and Pest District, had earlier received notice of the controversy and notice of the contamination of the United States Geological Survey by letters dated August 10, 1988

and September 8, 1988. The notice of violation of the Wyoming Department of Environmental Quality was furnished by mail on or about February 20, 1989 to Weston County, *Box 411*, which, from this record, is apparently the mailing address for John Fordyce as the Weed and Pest District supervisor.[4]

What we are essentially presented is an acknowledgement of receipt of the claim by a state agency in behalf of the local entity of government including liability denial. Does that suffice for compliance where unfortunately we are not advised what is contained in the file of the Weed and Pest District at its separate Weston County office not located in the county courthouse building? At a minimum, I would suggest that within this record, if the county furnished the Weed and Pest District a copy of the notice which was then filed in the Weed and Pest District records, subterfuge is being perpetrated as an unjustified tactic of hardball litigation. Furthermore, on this record, failure of receipt of the mailed notice should be a burden for appellee to prove.

This case has to be recognized for what is presented. A timely claim in proper form was made and actual notice of that claim was received by the governmental entity. The defense is that the notice was mailed to the wrong address and not that existence of the actual claim was neither known nor received. I find sufficient substantial compliance here to sustain appellants' proceeding and to reverse the action of the trial court. We should differentiate here notice of a claim, not notice of events from which a claim can be made which is an entirely different and more attenuated subject. I find substantial compliance by preparation and submission of a proper claim, albeit to a less than satisfactory address, supported within the documentary evidence that the submission of the claim was known by the responsible governmental entity. Consequently, *Duran*, 787 P.2d

---

**4.** Why the deposition of John Fordyce was not taken to determine receipt of the claim or other notice is undisclosed by this record.

971 and *Awe,* 534 P.2d 97 are not directly relevant nor dispositive.

I address this dissent for citation of legal authority in two directions. First, actual notice had been received and a proper claim was submitted within the criteria of well reasoned case law regarding sufficiency of reasonable compliance. Second, if issues of what notice was received and whether the actual claim was filed in the office of the Weed and Pest District are considered to be dispositive and remain in controversy, then remand should be made to clarify the record before assumptions are adopted to foreclose decision on the actual facts regarding what, if anything, county officers did to provide information, notice or the written document to the Weed and Pest District officialdom.

The case of *Indiana State Highway Com'n v. Morris,* 528 N.E.2d 468 (Ind.1988) illuminates my resolution of the first issue that actual notice of the filed claim was sufficient. Similarly to this case, the notice was mailed only to the Highway Commission in Indiana. In accord with established policy, the Highway Commission furnished a copy to the Attorney General. The statutory notice provision required formal notice by the claimant to both the Highway Commission and the Attorney General. The contention for dismissal in *Morris* was that notice was not received by the Attorney General *directly from the plaintiff.* The language of the opinion is informative and should be dispositive here:

> The language of the statute, literally applied, simply requires that the tort claim notice be "filed" with the Attorney General and the state agency. It does not designate *who* must file the notice.
> \* \* \*
>
>     \*    \*    \*    \*    \*    \*
>
> \* \* \* In the present case, these objectives are satisfied because the Commission and the Attorney General each received timely notice fully advising them that the plaintiffs were making a claim.
>
>     \*    \*    \*    \*    \*    \*
>
> \* \* \* In the present case, both the Commission and the Attorney General not only received full and timely informa-

tion regarding the occurrence, but they each received formal notification of plaintiffs' intentions to assert a claim. This constituted more than mere actual knowledge. It satisfied the statutory objectives and achieved substantial, if not actual, compliance.

*Id.* at 470–71 (emphasis in original).

Another case from the same jurisdiction is also informative. In *Scott v. Gatson,* 492 N.E.2d 337 (Ind.App.1986), claimant's counsel sent a demand letter to the public bus company in behalf of an injured automobile driver who was involved in a rear-end collision. The letter sent regular mail was answered by acknowledgement by a private insurance carrier adjusting service. Contest by the bus company and its insurance carrier to the appropriateness of service of notice was anchored in argument about the failure of delivery in person or by registered or certified mail. The Indiana court stated:

> "[T]o hold that the notice was defective because of its mode of delivery when the notice was received and the purpose of either hand delivery or registered or certified mail, that of assurance of receipt, was met, is contrary to logic and defies common sense."

*Id.* at 341 (quoting *Burggrabe v. Board of Public Works of City of Evansville,* 469 N.E.2d 1233, 1236 (Ind.App.1984)). That court recognized its prior law:

> "[W]e see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied." Galbreath v. City of Indianapolis* (1970) 253 Ind. 472, 255 N.E.2d 225, 229. (Emphasis in the original).

*Scott,* 492 N.E.2d at 340.

Substantial compliance was found from the receipt of the written notice by the governmental entity in proper time and the purpose of notice had been consequently satisfied. " 'When the purposes of the statute are fully satisfied, it is clear that the result is substantial compliance with the statute.' " *Id.* (quoting *Delaware*

*County v. Powell,* 272 Ind. 82, 393 N.E.2d 190, 192 (1979)).

Actual notice, lack of prejudice from character of notice provided and instigation of negotiation sufficed in *Duesterhaus v. City of Edmond,* 634 P.2d 720, 723 (Okl. 1981) (footnote omitted):

> The purposes of the notice provisions of the Act are to further legitimate municipal interests by promoting prompt investigation; providing the opportunity to repair any dangerous condition and for speedy and amicable settlement of meritorious claims; and to prepare to meet possible fiscal liabilities.

> Two of the purposes of the notice provisions of the Act are to afford the City the opportunity to promptly investigate and quickly settle meritorious claims. We fail to see how the City could have suffered any prejudice when the [city attorney] was actually engaged in settlement negotiations, and the claim was under investigation. Although notice to the [city attorney] is an unauthorized procedure outside the purview of the Act, in this instance we find that the notice was sufficient to constitute substantial compliance.

*See also Diemert v. City of Mobile,* 474 So.2d 663 (Ala.1985) and *Reirdon v. Wilburton Bd. of Ed.,* 611 P.2d 239 (Okl.1980). *Cf. Johnson v. City of Memphis,* 699 S.W.2d 179 (Tenn.App.1985). We should not ignore the fact that we deal here with a notice statute and not a service of process requirement. *Cf. Gookin,* 826 P.2d 229.

### CONCLUSION

In reality, if any decision is to be based only on the documents presented by appellants, the motion of appellee to dismiss, the concession such as it may be by appellants' counsel at the W.R.C.P. 12(b)(6) hearing or finally in the statement in appellate brief regarding notice received by the Weed and Pest District, justice and criteria of the rule itself would require reversal of the dismissal as a half-stage summary judgment decision. Opportunity should be provided to the injured landowner to document the

record for a proper decision. *Torrey,* 713 P.2d 1160.

It can be contended, obviously, that appellants should have been more adequately prepared with documentation at the hearing held by the trial court. It was, however, a W.R.C.P. 12(b)(6) session without any notice to counsel of a different course for a proposed decision such as summary judgment. No factual information obtained at the hearing should be utilized for decision as the non-movant was not afforded a proper opportunity to develop all of the facts. *Kimbley v. City of Green River,* 642 P.2d 443 (Wyo.1982).

What this majority should be called to determine is simply whether the "filing" requirement is met by receipt of the claim form for filing of the record by the governmental entity or whether filing is only met if claimant or the mailman walks the last mile so that delivery does not occur by act of a third party or defendant's affiliate agency. Tested on this basis, the decision of the majority is not supported by the available case law. *Duesterhaus,* 634 P.2d 720. At the very least, a remand is required to develop the facts for proper decision. This requirement has strong case law support in similar circumstances where the appellate court remanded. *Board of Aviation Com'rs of St. Joseph County v. Hestor,* 473 N.E.2d 151 (Ind.App.1985). *See also Emery v. University of New Mexico Medical Center,* 96 N.M. 144, 628 P.2d 1140 (1981) and *Cohen v. Pearl River Union Free School Dist.,* 81 A.D.2d 876, 439 N.Y.S.2d 393 (1981).

In another case, the Indiana court appropriately stated the standard that I would follow:

> Just as the notice statute should not become a trap for the unwary * * * neither should it become a refuge for the unconscientious.

*Collier v. Prater,* 544 N.E.2d 497, 500 (Ind. 1989).

I do not find counsel for appellants to have been unconscientious here and I would consequently reverse and remand in

the interest of justice and a proper adjudication of the substantive issues of liability.