The **JOURNAL GAZETTE,**
Appellant–Plaintiff,

v.

The **BOARD OF TRUSTEES OF PURDUE UNIVERSITY,**
Appellee–Defendant.

No. 79A02–9706–CV–370.

Court of Appeals of Indiana.

Aug. 25, 1998.

Thomas M. Gallmeyer, Jeffrey P. Smith, Hawk, Haynie, Gallmeyer & Chickedantz, Fort Wayne, for Appellant–Plaintiff.

John M. Stuckey, Stuart & Branigin, Lafayette, for Appellee–Defendant.

Stephen W. Lyman, Hall, Render, Killian, Heath & Lyman, Indianapolis, for Amicus Curiae.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant The Journal Gazette (The Journal) appeals the trial court's judgment in favor of Defendant–Appellee the Board of Trustees of Purdue University (Purdue).

We affirm.

### ISSUE

The Journal presents two issues for our review which we restate and consolidate as

whether Purdue met its burden of proof to allow requested documents to be excepted from the mandatory disclosure of Indiana's Access to Public Records Act.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment follow. Beginning on September 9, 1996, The Journal made repeated requests to Purdue staff for various documents. Purdue did not provide The Journal with all of the documents that it had requested. Therefore, on October 17, 1996, The Journal filed its complaint seeking access to public records previously requested. The evidentiary hearing was held on February 7, 1997, and the court entered its order denying The Journal access to the disputed documents on February 19, 1997. The Journal now brings this timely appeal.

## DISCUSSION AND DECISION

The Access to Public Records act (the Act) is codified at Ind.Code 5–14–3–1, et. seq. The Act requires a public agency to disclose its public records upon request of any person. Ind.Code 5–14–3–3. However, Ind. Code 5–14–3–4 creates an exception for public agencies for a number of document types. The person denied the record may then file an action to compel the production of the document. Ind.Code 5–14–3–9(d). In determining whether the record is exempt from the disclosure requirement of the Act, the court shall determine the matter de novo, with the burden of proof on the public agency to sustain the denial. Ind.Code 5–14–3–9(e).

■ Whether the documents fall under an exception to the mandatory disclosure of Ind.Code 5–14–3–3 is a matter of statutory construction. When interpreting a statute the words and phrases in a statute are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Saurer v. Bd. of Zoning Appeals,* 629 N.E.2d 893, 897 (Ind. Ct.App.1994). Additionally, statutes relating to the same subject matter should be construed together in order to produce a harmonious statutory scheme. *Wilburn v. State,*

671 N.E.2d 143, 147 (Ind.Ct.App.1996), *trans. denied.* Although it is true that we must look to legislative intent when construing a statute with ambiguous language, "[i]f the language of a statute is clear and unambiguous it is not subject to judicial interpretation." *Town of Merrillville v. Merrillville Conservancy Dist.,* 649 N.E.2d 645, 649 (Ind. Ct.App.1995), *reh'g denied, trans. denied.* When construing public disclosure laws this court has held that although the exceptions should be construed strictly, this does not mean that expressed exceptions specified by the legislature are to be contravened. *Robinson v. Indiana University,* 659 N.E.2d 153, 156 (Ind.Ct.App.1995) (*quoting Heltzel v. Thomas,* 516 N.E.2d 103, 106 (Ind.Ct.App. 1987), *trans. denied* ).

The Journal's request for production of documents involves a number of various documents. Therefore, we address each document type in its turn. The first is a number of documents requested by The Journal which are entries in a compliance log kept by Roger Blalock. This category includes 18 documents consisting of documents numbered PU/JG: 10, 11, 12, 13, 14–15, 16–17, 19, 21, 34, 35, 70–71, 77–78, 89–90, 94, 97–98, 120, 121, 124–125.[1]

Purdue cites Ind.Code 5–14–3–4(b)(7) in order to exclude the compliance log documents from the disclosure requirement.

If the issue in a de novo review under this section is whether a public agency properly denied access to a public record because the record is exempted under section 4(b) of this chapter:

> the public agency meets its burden of proof under this subsection by:
>
> > (A) proving that the record falls within any one (1) of the categories of exempted records under section 4(b) of this chapter; and
> >
> > (B) establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit; . . .

however, we will use the actual document number.

---

1. Appellant's brief and the document log lists document number PU/JG 124–125 as 124–2;

Ind.Code 5–14–3–9(f)(1). The Journal contends that Purdue did not meet either of its burdens of proof in regard to the compliance log documents.[2]

■ First we will look at Purdue's burden to prove that the document falls within the exception. Ind.Code 5–14–3–4(b)(7) allows the exclusion of "diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal" from the disclosure requirement of the Act. Blalock described the compliance log as notes that he has made concerning information provided to him on activities related to NCAA or Big Ten rules and regulations. He testified that it is an ongoing log with the entries referring to various matters. He also testified that the log is a place for his personal notes and that no one else makes entries in the log. He specifically referred to it as his notebook or diary, and shares it with select others only on occasion. (R. 1323–25). The compliance log kept by Blalock clearly falls under the diary, journal, or personal notes exception to the Act. Ind.Code 5–14–3–4(b)(7). Therefore, the trial court did not err in determining that Purdue does not need to disclose the documents.

The Journal argues that the compliance log is not covered under the diary exception because Blalock occasionally shows the log to others and because Blalock keeps his personal diary at home. Neither of these arguments is persuasive. First of all, just because notes are personal does not require them to be completely private. We do not believe that Blalock's occasional sharing of his log with select individuals diminishes the personal nature of the notes made to monitor Purdue's compliance with the conference and NCAA rules. Secondly, the fact that Blalock keeps a diary at his home on another topic has no bearing on the nature of the compli-

ance log, and we find it is a meritless argument.

■ Next, Purdue must establish the contents of the log entries with adequate specificity. Ind.Code 5–14–3–9(f)(1)(B). Purdue provided The Journal with a Document Log numbering each of the documents requested and listing the author, recipient, date, type and exception claimed. Under type of document, Purdue did not just state "Compliance Log entry," but also included the topic of that entry, for example: "re: investigating allegations of NCAA violations by men's basketball program." (R. 889–99). Furthermore, Blalock testified at trial about the nature of the entries made into the compliance log. The trial court then received all of the disputed documents for *in camera* review. Having each document in its entirety obviously provides adequate specificity of the contents and nature of the documents to allow the trial court to determine whether they are excluded from the disclosure requirements. Therefore, Purdue met its burden of proof as to the compliance log documents to show that they fall within the (b)(7) exception to the Act. Ind.Code 5–14–3–4(b)(7).[3]

■ The next documents we will address are two grievances, one made by Linn Dunn and the other by Machelle Joseph; they are documents PU/JG 179 and 180. Other records which are not required to be disclosed upon demand are "[r]ecords that are intra-agency or interagency advisory or deliberative material ... that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making." Ind. Code 5–14–3–4(b)(6). Since this is also an exception under subsection (b), the same two prong burden set forth in Ind.Code 5–14–3–9(f)(1) applies.

**2.** We note that The Journal also has a burden under Ind.Code 5–14–3–9(f)(2): "a person requesting access to a public record meets the person's burden of proof under this subsection by proving that the denial of access is arbitrary or capricious." Ind.Code 5–14–3–9(f)(2).

**3.** The Journal contends that the *in camera* review of the documents is not permitted to establish the contents of the log entries. We do not agree. In

*State v. Hogan* we commented that either an evidentiary hearing or *in camera* inspection might shed light on the privileged nature of the documents in controversy. 588 N.E.2d 560, 563 (Ind.Ct.App.1992), *trans. denied.* Therefore, there is no reason to find that the *in camera* review of the documents was not a means by which to establish the contents of the documents.

The trial court found that these two documents are exempted from disclosure, saying

> [a]lthough the grievance procedure is public, Purdue's internal grievance process is deliberative in nature because it allows Purdue employees to present claims of perceived "unfair" or "improper" treatment for administrative resolution. Grievances by their very nature are expressions of opinion or are of a speculative nature because they involve allegations of perceived "unfair" or "improper" treatment; they are communicated for the purpose of decision making.

(R. 881–82). The court continues to discuss the importance of confidentiality in order to allow Purdue to administratively address employee grievances and encourage such complaints. The trial court concludes that part of the discussion by stating:

> [t]he Court finds that document # s 189 and 190 are exempted. The protection of confidentiality as to the two, one-page grievances belongs to the grievants, Dunn and Joseph. Thus, the confidentiality of documents 189 and 190 which exists for the protection of the grievants can be waived by them making the documents disclosable. However, investigative documents generated by Purdue' [sic] in response to the filing of the grievances for the purpose of decision making continues to be exempted by (b)(6).

(R. 883). We agree with the trial court that the complaints submitted to Purdue are retained as documents which are part of its decision making process and are speculative in nature. Purdue's primary use of the documents at this time would be to determine which, if any, action should be taken in response to the grievances. There is testimony in the record that a grievance document is submitted to the decision maker at each step of the grievance process so that Purdue can make a decision about the treatment of an employee. (R. 1240). Therefore, the trial court did not err in determining that they

are retained for the purpose of decision making, as any investigative documents generated in response to the grievances, and excluding them from the disclosure requirement. Additionally, miscellaneous documents numbed PU/JG 32, 74–75 and 160–178, that are all a part of the follow up of the Joseph and Dunn grievances, are also excluded from the disclosure requirement as Purdue has shown that they are a part of the decision making process which follows employee grievances.

■ The Journal also contends that Purdue did not describe the contents of the grievances with adequate specificity. However, the grievances were submitted to the court for *in camera* review, and they were repeatedly referred to during the trial. (R. 1252–65). As we discussed with the compliance log documents, this sufficiently establishes the contents of the documents with adequate specificity.

■ For the remaining miscellaneous documents, the Journal again contends that Purdue did not meet its two fold burden of proof to allow exclusion of documents from mandatory disclosure. Again, the documents at issue were listed on the document log and submitted to the court for *in camera* review; therefore, the contents of the documents were established with adequate specificity. This leaves only Purdue's burden to prove that the documents fall under an exception to the Act.

■ The documents remaining under contention as miscellaneous documents are PU/JG: 5, 6, 18, 20, 25, 36, 37, 38–39, 40–42, 43–44, 50, 51, 52, 53, 54, 55–56, 57–59, 60–61, 81–87, 88, 91, 99, 100, 101, 105, 106–08, 109–11, 113–14, 118–19, 122, 126, 132, 134, 136, 145, and 150.[4] The Journal requested the documents at issue by specifically requesting documents regarding two specific allegations made against Purdue athletes, a letter received by Purdue containing allegations of NCAA violations, as well as documents re-

---

4. Miscellaneous documents PU/JG 32, 74–75 and 158–178 have already been addressed in connection with the Joseph and Dunn grievances. Additionally, The Journal lists document number 21 as miscellaneous. However, PU/JG 21 is a compliance log entry, which we have already ad-

dressed. Document PU/JG 7–9 is also listed as a miscellaneous document in The Journal's appeal. The trial court ruled that PU/JG 7–9 is not excluded from the mandatory disclosure of the act, and therefore, we will not include it in this appeal.

garding allegations of NCAA violations which have been reported to school officials but not the NCAA. All of these documents have an obvious common purpose: they are documents created and retained to determine compliance with NCAA and Big Ten regulations.

Purdue claims that these miscellaneous documents are excepted under Ind.Code 5–14–3–4(b)(6). Again, records that are not required to be disclosed upon demand under the (b)(6) exception are "[r]ecords that are intra-agency or interagency advisory or deliberative material ... that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making." Ind.Code 5–14–3–4(b)(6). Therefore, Purdue continues to be subject to the two prong burden of proof discussed above.

There is testimony in the record discussing Purdue's participation in the NCAA and the NCAA procedures for assuring compliance with its guidelines. The NCAA places an affirmative responsibility on its members to monitor their own compliance with its guidelines. Through testimony it was explained that Purdue's administration faces a number of potential NCAA rules violations and investigates and reports only a part of the allegations, those which have been substantiated or have some credence to them. Therefore, a decision making process is conducted to determine which allegations require investigation and are, ultimately, required to be reported to the NCAA. (R. 1269–1278). There is also testimony regarding the Purdue investigation of Luther Clay pursuant to an allegation made by Summer Herb, the Purdue investigation of improper contact between Frank Kendrick and Jamal Davis, and the investigation initiated by the letter to Jenny Gough which was specifically requested by The Journal. (R.1292–97). There is testimony about how a document may be created to inform another staff member pursuant to an entry in the compliance log in order to help make a decision about how to treat the information or allegation. (R. 1331). Finally, several documents, PU/JG 6, 145, and 146, are specifically addressed in the testimony. (R. 1308, 1311).

The Journal contends that Purdue did not fulfill its burden of proving that the documents fell within an exception to the Act. While some documents and incidents were specifically referred to in the testimony, it was not necessary for Purdue to specifically prove the exception for each individual document. The documents were requested as a whole or a group: those dealing with NCAA violations, and no documents in this group did not fall under this category. Therefore, we find no error in Purdue establishing the documents as exceptions as a whole.

Next, to each document at issue Purdue stated the claimed exemption on the document log. Furthermore, the above testimony was sufficient to establish the nature of the documents and that they were used for a decision making purpose. Additionally, there is ample testimony that the contents of the documents consists of opinions and speculation of an NCAA violation. Purdue met its burden of establishing that the miscellaneous documents fell within the (b)(6) exception to the mandatory disclosure of the Act.

■ Purdue raises one more specific problem with a subset of the miscellaneous documents identified as invoices or invoice vouchers. The Journal contends that the nature of invoices are not deliberative, are not letters or memoranda, and are not interagency or intra-agency. Because of these distinctions, The Journal argues that the (b)(6) exception to disclosure should not apply.

The Journal requested from Purdue documents relating to NCAA violations. It is obvious from the whole of the documents at issue and their content, that the invoices and invoice vouchers listed on the document log were gathered by the athletic department as part of its investigation into an alleged NCAA violation. In this context, the documents can be considered interagency documents used for a decision making purpose. Had The Journal requested the documents from another department under another pretext, it may cause a different result. However, here, the invoices and invoice vouchers were collected and retained by the athletic department as part of its investigation of alleged NCAA violations and are therefore

covered by the (b)(6) exception. We find no merit in The Journal's argument on this point.

## CONCLUSION

Purdue met its burden of proof to exclude the documents from the mandatory disclosure of the Access to Public Records Act.

Affirmed.

RUCKER and DARDEN, JJ., concur.