Scott C. NEWMAN, Appellant–Defendant,

v.

Howard BERNSTEIN, Appellee–Plaintiff.

No. 49A02–0111–CV–777.

Court of Appeals of Indiana.

April 8, 2002.

---

**9.** This section has since been recodified as Ind.Code § 26–1–9.1–109 (Burns Code Ed. Supp.2001).

Anthony W. Overholt, Chief Litigation Counsel, Office of Corporation Counsel for the City of Indianapolis, Indianapolis, IN, Attorney for Appellant.

## OPINION

BAKER, Judge.

The Marion County Prosecutor challenges the trial court's judgment granting Howard Bernstein access to certain plea negotiation policies. We hold that Judge Dreyer had jurisdiction to hear the case but erred in ordering the disclosure of certain policies through Indiana's Public Records Act.

### FACTS

This case involves the requested disclosure of the Marion County Prosecutor's written manual of plea negotiation policies for criminal cases. In October 1997, Bernstein sent two written requests to the Marion County Prosecutor's Office for records of policies related to plea negotiations and agreements. Newman responded in writing that those records fell under exceptions in the Public Records Act and denied the request. Specifically, Newman claimed that such records were "intra-agency advisory or deliberative in nature, communicated for the purpose of decision making." Appellant's App. at 22. Newman also claimed that those records were attorney work product. Appellant's App. at 22.

One month later Bernstein filed a complaint under the Public Records Act against Newman to obtain the plea policies. Judge Susan Macy Thompson was the judge originally assigned to the case. In February 2000, Judge Thompson recused herself under Ind. Trial Rule 79(C)(4), which requires recusal when a judge's impartiality might reasonably be questioned on account of the judge's asso-

ciation with the litigation. The Clerk of Marion County then appointed Judge Steven Eichholtz as special judge. Judge Eichholtz recused himself a week later, also under T.R. 79(C)(4). After Judge Eichholtz's recusal, the Clerk appointed Judge Richard H. Huston as special judge on February 18, 2000.

Though it is not recorded in the Chronological Case Summary (CCS), Judge Huston retired on April 1, 2000, shortly after his assignment to the case. As a result, Judge David J. Dreyer was assigned to Judge Huston's court on May 8, 2000. The date of Judge Dreyer's assignment to this case was not recorded in the CCS either but appeared as a finding in a subsequent order. No official notice of Judge Huston's retirement or Judge Dreyer's assignment was ever served on either party. According to Newman, the day after he had informally discovered Judge Dreyer had been assigned to the case, he filed a motion for change of judge. Newman cited Ind. Trial Rule 79(I) in support of his motion, claiming that Judge Dreyer lacked jurisdiction to hear the case because Judge Huston had not ceased to act as special judge in the case. Judge Dreyer denied the motion and later heard argument on Bernstein's complaint.

Newman submitted twenty-three plea agreement policies to the trial court for in camera inspection. The policies had been collected and assembled in one manual for negotiating plea agreements in Marion County criminal cases. The trial court described the policies as follows:

> The deputy prosecutors are instructed to follow the "policies." The prosecutor announces some policies in public forums. The "policies" vary in form, content, and tone. Some are rigid, some are advisory, and some are unclear. Many "policies" are merely administrative notices. A few are not related to legal issues or cases.

Appellant's App. at 10. In deciding whether the policies fit the definition of work product, the trial court further described the policies as being "standard for all cases." Appellant's App. at 13. Having reviewed the policies, the trial court ordered that only two of them—Exhibits F and N—be disclosed to Bernstein for inspection and copying. Newman now appeals the disclosure of Exhibits F and N. Neither policy has been included in the appellate record of this case.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Newman filed the only appellate brief in this appeal. When an appellee fails to file a brief, we may reverse the trial court's decision based on a showing of prima facie error. *Fagan v. Royer*, 244 Ind. 377, 387, 193 N.E.2d 64, 69 (1963). Prima facie error means error "at first sight, on first appearance, or on the face of it." *Bd. of Trustees of Purdue Univ. v. Severson*, 729 N.E.2d 1020, 1023 (Ind.Ct. App.2000), *trans. denied.* We will apply this standard of review to Newman's claims of error.

### II. Newman's Claims

#### A. Whether Judge Dreyer Lacked Jurisdiction

■ Newman first alleges that Judge Dreyer lacked jurisdiction to hear the case. Basing this allegation of error on trial rules regulating special judges, Newman contends that Judge Dreyer lacked jurisdiction to deny his motion because Judge Huston had retained jurisdiction. According to our trial rules, a special judge "shall retain jurisdiction of the case through judgment *unless* ... the special judge is unavailable by reason of death, sickness, absence, or unwillingness to serve." Ind. Trial Rule 79(L)(2) (emphasis added). While retirement from the bench

does not automatically make a judge unavailable, "a retired judge may be unavailable by virtue of death, sickness, absence, or unwillingness to act." *Roberts v. State*, 500 N.E.2d 197, 198 (Ind.1986) (applying unavailability rule for regular judges found in Ind. Trial Rule 63(A)). Here, Judge Dreyer found that Judge Huston had ceased to act as special judge because of his retirement. This finding was sufficient to show that Judge Huston was unavailable and no longer served as special judge in the case. *See Roberts*, 500 N.E.2d at 198–99 ("In this case, Judge Barney expressly determined that his predecessor was unavailable. He was certainly in the best position to make such a finding and his determination is cloaked with a presumption of regularity.").

## B. Right of Public Access to Plea Policies

■ In addition to challenging Judge Dreyer's jurisdiction, Newman maintains that the plea policies are exempt from mandatory disclosure under the Public Records Act. At trial and in his appellate brief, Newman relied on the "deliberative process" exemption and the "attorney work product" exemption.[1] The trial court correctly observed that Newman bears the burden of proving that he properly denied Bernstein access to the plea policies. Appellant's App. at 13–14. Indeed, the Public Records Act requires that the public agency—the Marion County Prosecutor's Office in this case—first prove that the records fall under at least one category of exempted records. IND.CODE § 5–14–3–9(f)(1)(A). Second, the public agency must

establish "the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit." I.C. § 5–14–3–9(f)(1)(B).

The trial court found that Newman failed to prove that the documents fell within the "deliberative process" and "attorney work product" exemptions. The trial court made no finding regarding adequate specificity. However, one panel of this court wrote the following about in camera review of requested documents: "Having each document in its entirety obviously provides adequate specificity of the contents and nature of the documents to allow the trial court to determine whether they are excluded from the disclosure requirements." *See Journal Gazette v. Bd. of Trustees of Purdue Univ.*, 698 N.E.2d 826, 829 (Ind.Ct.App.1998). Because the trial court reviewed the documents in camera and did not base its decision in part on a lack of specificity, we will assume Newman met his burden on proof on the second element.[2]

Returning to the first element of proof, the "deliberative process" exemption excludes from mandatory release: "Records that are intra-agency or interagency advisory or deliberative material . . . that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making." IND.CODE § 5–14–3–4(b)(6). The trial court questioned whether the deputy prosecutors—those for whom the plea policy manual was created—were decision makers under this exemption. Appellant's App. at 13–14. It focused on how much discretion the

---

1. At trial, Newman also relied on the attorney-client privilege to bar disclosure of the plea agreements. The trial court determined that Newman had waived this argument because Newman did not specify attorney-client privilege when he had originally denied Bernstein access to the plea negotiation policies. Appellant's App. at 13. Newman does not

challenge this ruling on appeal and we express no opinion about it.

2. We can imagine cases where the requested documents are so voluminous that in camera inspection of the entire lot—unaided by succinct descriptions—would not amount to adequate specificity of the documents' content.

individual deputy prosecutor enjoys in negotiating pleas with criminal defendants. Relying on a U.S. Supreme Court case addressing the analogous Freedom of Information Act (FOIA) exemption, the trial court reasoned:

> If the policies are the final controlling directives to deputies regarding disposition of cases, then the policies are *not* predecisional and *not* privileged under the [Public Records] Act. If the policies are communicated to deputies who have discretion and authority to make final decisions on cases, then the policies are predecisional, and are privileged under the [Public Records] Act.

Appellant's App. at 13 (emphases in original) (relying on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). Concluding that Newman failed to prove how much discretion deputy prosecutors have in applying the policies, the trial court allowed the disclosure of Exhibits F and N. Appellant's App. at 14.

The U.S. Supreme Court in *NLRB v. Sears, Roebuck & Co.* was asked to protect certain documents from disclosure by means of the following FOIA exemption: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.S. § 552(b)(5) (Law Co-op.1989). Beginning with the premise that the FOIA exemption was meant to protect, among other things, the " 'decision making processes of government agencies,' " the Court developed a distinction between "predecisional communication" and "communications made after the decision designed to explain" the decision. *Sears, Roebuck & Co.*, 421 U.S. at 151–52, 95 S.Ct. 1504 (quoting *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir.1972)). The "ultimate purpose" of protecting predecisional communication "is to prevent injury to the quality of agency decisions." *Id.* at 151, 95 S.Ct. 1504. In more specific terms, the " 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and ... the 'decision' and 'policies formulated' would be the poorer as a result." *Id.* at 150, 95 S.Ct. 1504 (quoting S.Rep. No. 813, at 9 (1965)).

Even if we assume those categories— pre- and post-decision communication— should apply to this case, we do not think the plea policy manual should be disclosed. We believe that the deputy prosecutors are decision makers, and, hence, the plea policies fall under the "deliberative process" exemption. The trial court noted that the policies were "standard for all cases." Appellant's App. at 13. In other words, Newman does not issue a new, final directive for each and every plea negotiation to be mechanically applied by the deputy prosecutor. Moreover, if every decision in every negotiation were left to Newman, then there would be no need for the policies. It appears, rather, that each deputy prosecutor ascertains the facts of the individual case, tailors the appropriate negotiating strategy, and makes decisions for each plea negotiation based on the policies. The policies are—in the rubric of *Sears, Roebuck & Co.*—predecisional. Thus, we are left to conclude that the plea negotiation policies are "communicated for the purpose of decision making." *See* I.C. § 5-14-3-4(b)(6); *cf. Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 257 (D.C.Cir.1977) (observing in a FOIA case that "various positions which might be adopted in contract negotiations are as much a part of the deliberative process as the actual recommendations and advice which are agreed upon").

We further note that if the plea negotiation manuals were disclosed, the quality of decision making by the Marion County Prosecutor's Office would likely suffer. A

deputy prosecutor would in many cases begin a plea negotiation from a seriously disadvantaged bargaining position. All the world would have access to the Marion County Prosecutor's acceptable bargaining outcomes, while criminal defendants could hold their cards close to the vest and reveal them as they choose during the negotiation. A practical result would be the rescission of the plea policies, leaving individual deputy prosecutors without a clear understanding of how to proceed in each negotiation.

In sum, Newman has made a prima facie showing of trial court error in its refusing to apply the "deliberative process" exemption to the entire plea negotiation manual. We need not address the applicability of the "attorney work product" exemption.

Reversed.

NAJAM, J., and MATTINGLY–MAY, J., concur.